PEOPLE v CROUSORE

PEOPLE v WYNGAARD

Docket Nos. 82586, 85121. Submitted June 3, 1986, at Lansing. Decided April 20, 1987.

David A. Crousore was convicted of aiding and abetting the prison escape of James Alexander following a jury trial in Washtenaw Circuit Court and was sentenced, Ross W. Campbell, Jr., J.

Raymond L. Wyngaard was convicted of being an accessory after the fact to the prison escape of James Alexander and James Chipman following a jury trial in Washtenaw Circuit Court, Ross W. Campbell, Jr., J. Wyngaard was subsequently convicted of being an habitual offender, fourth offense, and was sentenced accordingly.

Both Crousore and Wyngaard appealed. The appeals have been consolidated.

The Court of Appeals *held*:

1. The Michigan harboring and concealing statute does not preempt the common-law felony of accessory after the fact to escape from prison. Defendant Wyngaard was properly charged and convicted as an accessory after the fact to prison escape.

2. There was sufficient evidence upon which to convict defendant Crousore of aiding and abetting Alexander's prison escape.

3. The trial court in instructing the jury in the Crousore case

REFERENCES

Am Jur 2d, Criminal Law §§ 35, 167-170, 174.

Am Jur 2d, Escape, Prison Breaking, and Rescue §§ 3, 5.

Am Jur 2d, Evidence § 640.

Am Jur 2d, Searches and Seizures §§ 35, 37.

Am Jur 2d, Trial §§ 623, 624, 724.

Am Jur 2d, Witnesses §§ 30 *et seq.*

Constitutionality of searching premises without search warrant as incident to valid arrest—Supreme Court cases. 23 L Ed 2d 966.

Harboring or concealing federal prisoner after his escape, under 18 USCS § 1072. 49 ALR Fed 814.

Construction and application of federal statute (18 USCS § 1071 and similar predecessor provision) making it offense to harbor or conceal person to prevent discovery and arrest. 16 ALR Fed 253.

See also the annotations in the Index to Annotations under Aiding and Abetting; Harboring Criminals; Search and Seizure.

made an erroneous statement of the law which had the effect of misleading the jury. Accordingly, Crousore's conviction must be reversed.

4. The trial court also failed to instruct the jury that the aid or encouragement for aiding and abetting must have been given before or at the time of the commission of the offense and that the offense was completed once the prisoner left the prison without being lawfully discharged. Without this element of aiding and abetting, it is possible that the jury convicted Crousore of being an accessory after the fact. Crousore's conviction must be reversed on this basis as well.

5. Defendant Crousore's contention that the trial court's charge to the jury failed to instruct that the prison escape must have been committed by someone and failed to instruct that defendant must have performed acts and encouragement which aided or assisted the commission of the crime is rejected. Reading the instruction as a whole, those elements are present.

6. The trial court erroneously failed to suppress evidence of a gun seized from Crousore's home following his arrest. Crousore's conviction must be reversed on this basis also.

7. The trial court did not err in failing to disclose to the jury that a witness was testifying under immunity.

Reversed as to defendant Crousore, affirmed as to defendant Wyngaard.

1. ESCAPE — HARBORING AND CONCEALING — ACCESSORY AFTER THE FACT — CRIMINAL LAW.

The harboring and concealing statute does not preempt the common-law offense of accessory after the fact to prison escape (MCL 750.199, 750.505; MSA 28.396, 28.776).

2. CRIMINAL LAW — ACCESSORY AFTER THE FACT — COMMON LAW.

An accessory after the fact at common law is one who, with knowledge of another's guilt, renders assistance to a felon in an effort to hinder the felon's detection, arrest, trial or punishment.

3. CRIMINAL LAW — HARBORING AND CONCEALING — ACCESSORY AFTER THE FACT.

The harboring and concealing statute merely prohibits the providing of a refuge for or hiding an escapee; it does not include a prohibition against doing something more to prevent the escapee's detection or arrest; punishment for any additional acts is provided for under the common-law felony of accessory after the fact (MCL 750.199; MSA 28.396).

4. CRIMINAL LAW — AIDING AND ABETTING — ESCAPE.

The elements of aiding and abetting a prison escape are: (1) the principal was lawfully detained in a prison; (2) the principal escaped or attempted to escape from the prison; (3) the defendant must have performed acts or given encouragement which aided or assisted the prison escape or the attempted prison escape, either before or at the time of the escape; and (4) the defendant must have intended that the principal escape from prison at the time of giving the aid or encouragement (MCL 750.193, 767.39; MSA 28.390, 28.979).

5. ESCAPE — PRISONS AND PRISONERS — CRIMINAL LAW.

An actual escape from prison is not a necessary element of the offense of prison escape (MCL 750.193[1]; MSA 28.390[1]).

6. CRIMINAL LAW — JURY INSTRUCTIONS — MISLEADING CHARGES.

It is error in a criminal prosecution for a trial judge to omit from his charge to the jury a legally essential ingredient of the crime, or to include an erroneous or misleading charge.

7. ARREST — SEARCHES AND SEIZURES — SEARCH WARRANTS.

A search warrant is generally required for the routine search of rooms other than that in which an arrest occurs or for searching desk drawers or other closed or concealed areas in that room itself.

8. CONSTITUTIONAL LAW — WITNESSES — RIGHT TO REMAIN SILENT — INFERENCES.

The exercise of a witness' constitutional right to remain silent should not be used as evidence to support an inference for either side.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William H. Delhey,* Prosecuting Attorney, and *Lynwood E. Noah,* Deputy Chief Assistant Prosecuting Attorney, in Docket No. 82586, for the people.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William H. Delhey,* Prosecuting Attorney, and *Larry L. Burgess,* Assistant Prosecuting Attorney, in Docket No. 85121, for the people.

State Appellate Defender (by *Richard B. Ginsberg*), for David A. Crousore.

*William R. Mollison*, for Raymond L. Wyngaard.

Before: M. J. KELLY, P.J., and D. E. HOLBROOK, JR., and T. M. GREEN,* JJ.

PER CURIAM. Following a jury trial, defendant Raymond L. Wyngaard was convicted of being an accessory after the fact to a prison escape, MCL 750.505; MSA 28.773. He was subsequently convicted of being an habitual offender—fourth or subsequent offense, MCL 769.12; MSA 28.1084. He was sentenced to from forty to sixty months in prison on the accessory conviction, which sentence was vacated upon his sentence to from twenty to forty years in prison on the habitual offender conviction.

Defendant David Alan Crousore was convicted by a jury of aiding and abetting the prison escape of James Alexander, MCL 750.193; MSA 28.390 and MCL 767.39; MSA 28.979. He was sentenced to from forty to sixty months in prison. Both defendants appealed as of right and their cases were consolidated as the convictions at issue arose out of the same escape.

Defendant Wyngaard raises one issue on appeal: Does the Michigan harboring and concealing statute preempt the common-law felony of accessory after the fact to escape from prison?

Defendant Crousore raises five issues on appeal: (1) Was there sufficient evidence to convict defendant on the charge of aiding and abetting a prison escape? (2) Did the trial court commit error in instructing the jury on the elements of aiding and abetting a prison escape? (3) Did the trial court abuse its discretion in failing to suppress a gun seized from the house in which defendant lived with his girlfriend? (4) Did the trial court abuse its

* Circuit judge, sitting on the Court of Appeals by assignment.

discretion in failing to grant defendant's new counsel's request for an adjournment? and (5) Did the trial court commit error by deciding not to disclose to the jury that a witness was testifying under a grant of immunity?

The events out of which each of the defendants' convictions arose are as follows. On January 2, 1984, at approximately 9:30 A.M., James Alexander and James Chipman escaped from the Huron Valley Prison. A woman in a light blue Camaro drove Alexander and Chipman from the prison to a motel room at the Wolverine Inn in Ann Arbor. Approximately ten minutes after their arrival, defendant Crousore entered the motel room. According to Alexander, Crousore told them that he was riding "shotgun" in the event of trouble and that his "old lady" had rented the room for them the previous day. He told Chipman that he was glad to see him out.

The next day, at approximately 10:00 A.M., defendant Wyngaard picked up Alexander and Chipman from the Wolverine Inn and took them to a bank where he withdrew $300 and gave it to Chipman. Wyngaard then took the two men to the Bella Motel in Center Line. According to Alexander, Wyngaard visited the men at the motel approximately four more times. During these visits Wyngaard brought the men a suitcase full of clothing, a .22 caliber pistol, more money and false identification. The men eventually left the motel room through a window to escape detection by the police.

Defendant Wyngaard testified that he knew of Chipman from his own stay in prison, from which he was released in June, 1983. He had never met Alexander until the day he picked the two men up at the Wolverine Motel. Wyngaard went to the motel after receiving a call for assistance from a

man who identified himself as a friend of a man Wyngaard knew. Wyngaard borrowed his sister's car and went to the Wolverine Inn. Once there, the men forced defendant at gunpoint to take them to Warren. Defendant managed to talk them into taking $300 and then he took them to the Bella Motel. The men kept defendant for approximately six more hours and then let him go after eliciting a promise that he would not call the police.

Defendant Crousore's defense theory was that Alexander had help from prison employees inside the prison and implicated Crousore to protect those employees. As noted, Crousore was found guilty of aiding and abetting the prison escape of Alexander. The jury could not reach a unanimous verdict on the charge of aiding and abetting the prison escape of Chipman.

Since the claims of each defendant are different they will be considered separately.

### WYNGAARD

Wyngaard contends on appeal that the harboring and concealing statute, MCL 750.199; MSA 28.396, preempts the common-law offense of accessory after the fact to prison escape, MCL 750.505; MSA 28.773, and therefore the trial court erred in denying his attempts to quash the information charging him with being an accessory after the fact. We disagree.

It is well-established that the common law may be changed and modified by statute and that in cases of conflict the statute prevails. *People v Grand Trunk Western R Co,* 3 Mich App 242, 248; 142 NW2d 54 (1966). In the instant case, the trial court found that defendant's actions went beyond what was prohibited in the harboring and conceal-

ing statute. We agree and find, therefore, that there is no conflict between the two offenses.

The statute prohibiting harboring and concealing provides:

> Any person who knowingly or wilfully conceals or harbors for purpose of concealment, any person mentioned in this chapter, who has escaped or is escaping from lawful custody, shall be guilty of a misdemeanor. [MCL 750.199; MSA 28.396.]

Defendant was convicted of the common law crime of being an accessory after the fact to prison escape pursuant to MCL 750.505; MSA 28.773, which provides:

> Any person who shall commit any indictable offense at the common law, for the punishment of which no provision is expressly made by any statute of this state, shall be guilty of a felony, punishable by imprisonment in the state prison not more than 5 years or by a fine of not more than $10,000.00, or both in the discretion of the court.

It is well-established that criminal statutes must be strictly construed. This rule is most often employed in determining what actions come within the scope of a statutory prohibition. *People v Willie Johnson,* 75 Mich App 221, 224-225; 255 NW2d 207 (1977), aff'd 406 Mich 320; 279 NW2d 534 (1979); *People v Jones,* 142 Mich App 819, 822; 371 NW2d 459 (1985). The rule of strict construction of criminal statutes reflects the idea that it is the responsibility of the Legislature to define criminal offenses. *Willie Johnson, supra.* The primary object of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *Great Lakes Steel Division of National Steel Corp v Public Service Comm,* 143 Mich App

761, 764; 373 NW2d 212 (1985), lv den 424 Mich
854 (1985). In interpreting a statute, the rule of
ordinary usage and common sense must be ap-
plied. *Jones, supra.* Dictionary definitions are ap-
propriate aids in interpreting a statute. *Great
Lakes Steel, supra.*

*Black's Law Dictionary* defines "accessory after
the fact" as:

> One who, having full knowledge that a crime
> has been committed, conceals it from the magis-
> trate, and harbors, assists, or protects the person
> charged with, or convicted of, the crime. . . .
> All persons who, after the commission of any
> felony, conceal or aid the offender, with knowledge
> that he has committed a felony, and with intent
> that he may avoid or escape from arrest, trial,
> conviction, or punishment, are accessories. [*Black's
> Law Dictionary* (4th ed, 1968), p 29.]

An accessory after the fact at common law is
one who, with knowledge of another's guilt, ren-
ders assistance to a felon in an effort to hinder the
felon's detection, arrest, trial or punishment. *Peo-
ple v Lucas,* 402 Mich 302, 304; 262 NW2d 662
(1978).

*Black's Law Dictionary* defines "conceal" as:

> To hide; secrete; withhold from the knowledge of
> others; to withdraw from observation; to withhold
> from utterance or declaration; to cover or keep
> from sight. [*Id.,* p 360.]

"Harbor" is defined:

> To afford lodging to, to shelter, or to give a
> refuge to. . . . To receive clandestinely and with-
> out lawful authority a person for the purpose of so
> concealing him that another having a right to the

lawful custody of such person shall be deprived of the same.

\* \* \*

It may be aptly used to describe the furnishing of shelter, lodging, or food clandestinely or with concealment, and under certain circumstances, may be equally applicable to those acts divested of any accompanying secrecy. [*Id.,* p 847.]

We conclude that the Legislature did not intend the harboring and concealing statute to encompass all aspects of aiding an escape. Rather, the statute merely prohibits the providing of a refuge for or hiding the escapee. It does not go further and include a prohibition against something more to prevent the escapee's detection or arrest, e.g., providing supplies, weapons, money or transportation, as was done by defendant Wyngaard herein, with knowledge that a crime has been committed. Punishment for these additional acts is provided for under the common-law felony of accessory after the fact.

Defendant's reliance on *United States v Eaglin,* 571 F2d 1069 (CA 9, 1977), and *United States v Kutas,* 542 F2d 527 (CA 9, 1976), in support of his argument is misplaced. The defendants in those cases were charged with harboring and concealing an escaped federal prisoner, 18 USC 1072. That statute provides:

Whoever willfully harbors or conceals any prisoner after his escape from the custody of the Attorney General or from a Federal penal or correctional institution, shall be imprisoned not more than three years.

The federal statute imposes a much stiffer penalty for violation indicating an intent that it cover a broader range of acts. The federal penalty is

much closer to the five-year penalty imposed in Michigan for being an accessory after the fact than to the ninety-day penalty for the harboring and concealing misdemeanor. Further, the Michigan statute stresses that it limits concealing and harboring to that done "for purposes of concealment." Strict construction of the statute does not include providing assistance to the escaped felon, with knowledge that the crime was committed, to avoid detection and arrest. It merely includes hiding the person from the view of others. The federal statute without the limitation included in the state statute enables it to include a broader range of acts within the definition of harboring and concealing.

Accordingly, we conclude that defendant Wyngaard was properly charged and convicted as an accessory after the fact to prison escape.

### CROUSORE

Defendant Crousore first contends that the evidence was insufficient to find him guilty of aiding and abetting a prison escape. We disagree.

When reviewing a case to determine if there was sufficient evidence to convict a defendant, this Court views the evidence in a light most favorable to the prosecution and determines whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979), cert den 449 US 885 (1980).

Defendant was convicted of aiding and abetting the prison escape of James Alexander. The elements of aiding and abetting a prison escape are: (1) the principal was lawfully detained in a prison; (2) the principal escaped or attempted to escape

from the prison; (3) the defendant must have performed acts or given encouragement which aided or assisted the prison escape or the attempted prison escape, either before or at the time of the escape; and (4) the defendant must have intended that the principal escape from prison at the time of giving the aid or encouragement. MCL 750.193; MSA 28.390 and MCL 767.39; MSA 28.979.

Testimony presented at trial indicates that, in the event of trouble, defendant was "riding shotgun" behind the car of the woman who picked up Alexander and Chipman at the prison. Further, defendant's "old lady" had rented the room at the Wolverine Inn for Chipman and Alexander the day before the escape. In light of these facts, we find that there was sufficient evidence upon which to convict defendant of aiding and abetting Alexander's prison escape.

Defendant Crousore next contends that the trial court improperly instructed the jury on the elements of the crime of aiding and abetting a prison escape. The trial court charged the jury as follows:

The defendant is charged in each of Counts Two and Three with aiding the escape of a prisoner. The defendant pleads not guilty to these charges.

To establish these charges the prosecution must prove each of the following elements beyond a reasonable doubt:

First, as to Count Two, that James M. Alexander was a prisoner committed to or detained in the Huron Valley Men's Facility, and, second, that James M. Alexander was lawfully committed to or detained in that facility.

As to Count Three in the information, the first and second elements would be, first, that James E. Chipman was a prisoner committed to or detained in the Huron Valley Men's Facility, and second,

that James E. Chipman was lawfully committed to or detained in that facility.

Third, that the defendant intentionally aided or assisted those prisoners respectively, Chipman and Alexander, in their efforts to make an escape.

It does not matter whether the escape was made or even attempted but that the defendant must have intended to assist the escape of the prisoner.

And fourth, that the defendant must have intended the commission of the crime charged, that is the escape of James Alexander as to Count Two, and the escape of James Chipman as to Count Three at the time of giving the aid or encouragement.

It appears that the court's charge is a combination of the aiding and abetting instruction, CJI 8:1:02 and 8:1:03, and the aiding the escape of a prisoner instruction, CJI 13:3:01, of which defendant was not charged. The applicable aiding and abetting instruction, which should have been given in its entirety, provides:

(1) It is charged in this case that [the accused] did not directly commit the crime but that he intentionally aided or assisted another in the commission of that crime by [state alleged acts].

(2) All persons who aid or assist in the commission of a crime are as liable as if they had directly committed the crime and may be convicted of the principal offense or as an aider and abettor.

\*　　\*　　\*

(3) Before you may convict, you must be convinced of the following beyond a reasonable doubt:

(4) First, the crime charged must have been committed either by the defendant or some other person. [However, it is no defense that there has not been a conviction.]

(5) Second, the defendant must have performed acts or given encouragement which aided or as-

sisted the commission of that crime, either before or at the time of the commission of the crime.

(6) Third, the defendant must have intended the commission of the crime charged or have known that the other person intended its commission at the time of giving the aid or encouragement.

The crime committed was escape from prison, MCL 750.193(1); MSA 28.390(1), which provides:

A person imprisoned in a prison of this state who breaks prison and escapes, breaks prison though an escape is not actually made, escapes, leaves the prison without being discharged by due process of law, attempts to break prison, or attempts *to escape from prison,* is guilty of a felony, punishable by further imprisonment for not more than 5 years.

Defendant's first assertion of error with respect to the trial court's charge to the jury is that it failed to state that an escape from prison is an element of the offense of prison escape. Reading the instruction as a whole, as we are bound to do, *People v Burgess,* 153 Mich App 715; 396 NW2d 814 (1986), we find error on this basis even though we do not agree with defendant's assertion that an actual escape from prison is a necessary element of the offense of prison escape. We find that an actual escape is not necessarily an element of the crime since pursuant to the language of the statute a person may be guilty of prison escape even though an escape is not actually made or if just an attempt to escape is made. In any event, the language of the instruction given does not provide for this element in any form. Rather, the charge states: "It does not matter whether an escape was made *or even attempted."* We find this to be an erroneous statement of the law which had the

effect of misleading the jury. Accordingly, we must reverse. *People v Liggett,* 378 Mich 706, 714; 148 NW2d 784 (1967).

We also agree with defendant's assertion that the trial court's charge was erroneous since it failed to instruct that the aid or encouragement for aiding and abetting must have been given before or at the time of the commission of the offense and that the offense was completed once the prisoner left the prison without being lawfully discharged. See CJI 8:1:03(5), *People v Charles Johnson,* 62 Mich App 240; 233 NW2d 246 (1975), and *People v Mendoza,* 108 Mich App 733, 742; 310 NW2d 860 (1981), lv den 411 Mich 1084 (1981). In the instant case, in addition to the testimony that defendant Crousore was riding "shotgun" behind the car in which Chipman and Alexander were taken from the prison and that Crousore's girl-friend had arranged for the motel room at the Wolverine Inn the day before the escape, there was some testimony that Crousore aided Chipman and Alexander after their escape once they were lodged at the Wolverine Inn. Without the above element of aiding and abetting it is possible that the jury convicted defendant of being an accessory after the fact. Therefore, we find the omission of this element to be prejudicial and must reverse on this basis as well. *Liggett, supra.*

We do not agree with defendant's contentions that the charge failed to instruct that the prison escape must have been committed by someone and failed to instruct that defendant must have performed acts and encouragement which aided or assisted the commission of the crime. Reading the instruction as a whole, *Burgess, supra,* we find these elements to be present.

Defendant next contends that the trial court erroneously failed to suppress evidence of the gun

seized from Crousore's home, which he shared with his girlfriend, following his arrest there. We will consider this issue so that the same mistake is not made upon retrial. Alexander testified that he was given a .22 caliber pistol by defendant Wyngaard at the Bella Motel in Center Line. The pistol was seized at Crousore's home following his arrest there. The trial court admitted evidence of the pistol pursuant to the search incident to valid arrest exception to the warrant requirement. *Chimel v California,* 395 US 752; 89 S Ct 2034; 23 L Ed 2d 685 (1969); see also *People v Taylor,* 67 Mich App 76; 240 NW2d 273 (1976). In *Chimel,* the United States Supreme Court limited the search incident to arrest:

> There is no comparable justification, however, for routinely searching any other room other than that in which an arrest occurs—or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself. Such searches, in the absence of well-recognized exceptions, may be made only under the authority of a search warrant. [*Chimel, supra,* p 763.]

Here, defendant and his girlfriend were arrested while they were still in their pajamas. Defendant was allowed to change into street clothes, was handcuffed and escorted to the police car. His girlfriend was then taken to the bedroom and allowed to change. In the meantime, Detective Houghton conducted a search of the living room and kitchen for information concerning the whereabouts of Chipman. Houghton searched through a box of papers on the kitchen floor and discovered the .22 caliber pistol. Houghton testified that the gun was not in plain view. We find that, since defendant was in custody and his girlfriend had been escorted to another room while the search

was conducted, sufficient justification for the search without a warrant did not exist. Hence, the trial court erred in admitting the evidence. This Court will not disturb a trial court's ruling at a suppression hearing unless it is clearly erroneous. *People v Burrell*, 417 Mich 439, 448; 339 NW2d 403 (1983); MCR 2.613. We conclude that the trial court's decision not to suppress evidence of the pistol was clearly erroneous. Accordingly, we would reverse on this basis.

In view of our disposition of these issues we need not review defendant's contention that the trial court abused its discretion in failing to grant defendant's counsel's request for an adjournment.

Defendant's final contention, that the trial court erred in failing to disclose to the jury that witness Kevin Stephenson was testifying under immunity, will also be considered at this time so that the issue does not arise again.

During his opening statement, defense counsel stated defendant's theory of the case was that the escape was effected with help inside the prison and that one prison guard in particular, Stephenson, had "masterminded" the escape. Defendant contended that he was being blamed in order to protect Stephenson and the other guards. After trial had commenced, the prosecution informed the court that Stephenson had decided to exercise his Fifth Amendment rights and would not testify unless granted immunity. Defendant objected to the prosecutor's request that Stephenson be excused as a witness on the basis that it would put defendant in an awkward position. The trial court granted Stephenson immunity but prohibited defendant from commenting on it. Stephenson testified and denied any involvement in the escape. Defendant now claims he should have been permitted to comment on Stephenson's decision to

exercise his Fifth Amendment rights. We disagree. See *People v Dyer,* 425 Mich 572; 390 NW2d 645 (1986). The exercise of a witness' constitutional right to remain silent should not be used as evidence to support an inference for either side. *Dyer, supra,* p 581, quoting *People v Diaz,* 98 Mich App 675, 684; 296 NW2d 337 (1980).

To summarize, we find that the trial court's instructions to the jury were erroneous as they did not state completely all of the elements of the offense of aiding and abetting a prison escape. Accordingly, we reverse defendant Crousore's conviction. Upon retrial the trial court should heed our holding with respect to the suppression of the pistol found in defendant's home.

Reversed as to defendant Crousore; affirmed as to defendant Wyngaard.

M. J. KELLY, P.J., concurs in the result.