## PEOPLE v HUIZENGA

Docket No. 105446. Submitted August 11, 1988, at Grand Rapids. Decided May 1, 1989. Leave to appeal applied for.

Kevin John Huizenga entered a conditional guilty plea in Kent Circuit Court, Stuart Hoffius, J., to a charge of carrying a concealed weapon. Defendant specifically preserved for appeal a challenge that his gun did not come within the statutory definition of a pistol or firearm because it was inoperable due to a broken hammer. Defendant's plea was accepted.

The Court of Appeals *held:*

The concealed weapons statute clearly requires that the weapon must be capable of propelling some dangerous projectile. The pistol defendant had in his possession was inoperable in that it was totally incapable of propelling a dangerous projectile and could not readily have been made operable. Defendant therefore was not carrying a concealed pistol or firearm as defined by the Legislature and the state is precluded from obtaining a valid conviction against defendant.

Reversed.

C. O. GRATHWOHL, J., dissented. He would hold that the concealed weapons statute does not require that the weapon must be capable of propelling some dangerous projectile, that the statute defines "firearm" to include "any weapon from which a dangerous projectile *may* be propelled by using explosives . . ." that the statutory definition does not require that the weapon must be capable of propelling some dangerous projectile, and that the mere fact that a pistol is inoperable does not preclude a conviction under the statute. He would affirm.

1. CRIMINAL LAW — STATUTES — JUDICIAL CONSTRUCTION.
   Criminal statutes must be strictly construed.

2. WEAPONS — CARRYING A CONCEALED WEAPON — INOPERABLE WEAPONS.
   A pistol as defined under the concealed weapons statute must be

REFERENCES

Am Jur 2d, Statutes §§ 293-306; Weapons and Firearms § 16.

Fact that gun was unloaded as affecting criminal responsibility. 68 ALR4th 507.

an operable pistol, i.e., it must be capable of propelling the requisite-sized dangerous projectile or be able to be altered to do so within a reasonably short time; a handgun which is broken and therefore incapable of firing a dangerous projectile and cannot be altered to do so within a reasonably short period of time cannot provide the basis for a conviction under the concealed weapons statute (MCL 750.227; MSA 28.424).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William A. Forsyth,* Prosecuting Attorney, *Timothy K. McMorrow,* Chief Appellate Attorney, and *Carol K. Bucher,* Assistant Prosecuting Attorney, for the people.

*Theodore Earl Dunn,* for defendant.

Before: HOLBROOK, JR., P.J., and MURPHY and C. O. GRATHWOHL,* JJ.

MURPHY, J. Defendant appeals as of right from his plea-based conviction for carrying a concealed weapon, MCL 750.227; MSA 28.424. Defendant specifically preserved for appeal a challenge that his gun did not come within the statutory definition of a "pistol" or "firearm."

In entering his conditional guilty plea defendant read into the record the following statement:

On March 6th, 1987 in Kent County, Michigan at or about 10:30 P.M. a police officer grabbed my arm as I walked away from my wrecked car. A nine millimeter SWD Cobray that was totally inoperative and was not capable of propelling by the use of explosives, gas, or air a dangerous object fell from beneath my jacket to the ground. This is the same SWD Cobray which Lieutenant Pickelman of the Michigan State Police stated that was not capable of being fired because of no hammer to strike the cartridge to make the cartridge explode.

* Circuit judge, sitting on the Court of Appeals by assignment.

Thereafter, defendant told the trial court that the gun was registered in his name and he had it with him in his automobile. However, defendant did not have a permit to carry the pistol with him. Defendant then explained that he had been target shooting with the gun when the hammer broke in half. Defendant unloaded the gun, took the clip out, and threw the gun onto the back seat of his car. On his way home, defendant was involved in an accident, rolling his car. As defendant was getting out of his car, he tucked the gun under his coat. Apparently, an off-duty policeman who arrived on the scene of the accident grabbed defendant's arm and the gun fell to the ground.

Defendant's gun was submitted for testing by the Michigan State Police. The report concluded that the pistol was not capable of firing because of a broken hammer.

On appeal defendant's sole contention is that he did not have in his possession, concealed or otherwise, a "pistol" or a "firearm" as defined under Michigan law.

MCL 750.227; MSA 28.424 in pertinent part provides:

A person shall not carry a pistol concealed on or about his or her person, or, whether concealed or otherwise, in a vehicle operated or occupied by the person, except in his or her dwelling house, place of business, or on other land possessed by the person, without a license to carry the pistol as provided by law and if licensed, shall not carry the pistol in a place or manner inconsistent with any restrictions upon such license. [MCL 750.227(2); MSA 28.424(2).]

This Court has stated that the purpose of this statute is to prevent a quarreling or criminal person from suddenly drawing a concealed weapon

and using it without prior notice to a victim that he was armed. *People v Coffey,* 153 Mich App 311, 314; 395 NW2d 250 (1986), lv den 426 Mich 858 (1986); *People v Emery,* 150 Mich App 657, 663; 389 NW2d 472 (1986).

Moreover, the intent of this statute has been stated as being to prevent weapons from being carried where they might be used to take lives. See *People v Clark,* 21 Mich App 712, 716; 176 NW2d 427 (1970).

MCL 750.222(a); MSA 28.419(a) defines "pistol" as it is used in the concealed weapons statute:

> "Pistol" means a *firearm, loaded or unloaded,* 30 inches or less in length, *or any firearm,* loaded or unloaded, which by its construction and appearance conceals it as a firearm. [Emphasis added.]

The Legislature has also provided:

> In the construction of the statutes of this state, the rules stated in sections 3a to 3w shall be observed, unless such construction would be inconsistent with the manifest intent of the legislature. [MCL 8.3; MSA 2.212.]

"Firearm" is then described in a manner which we believe clearly requires that the weapon, i.e., pistol, must be capable of propelling some dangerous projectile:

> The word "firearm," except as otherwise specifically defined in the statutes, shall be construed to include any weapon from which a dangerous projectile may be propelled by using explosives, gas or air as a means of propulsion, except any smooth bore rifle or handgun designed and manufactured exclusively for propelling BB's not exceeding .177 calibre by means of spring, gas or air. [MCL 8.3t; MSA 2.212(20).]

Initially we note that prior decisions have interpreted this statute somewhat broadly by blurring the distinction between inoperable and unloaded firearms. See *People v Sanchez,* 98 Mich App 562; 296 NW2d 312 (1980) (finding the distinction between unloaded and inoperable firearms to be "meaningless" and holding an inoperable firearm may be a "pistol" within the meaning of the statute), and *People v Jiminez,* 27 Mich App 633; 183 NW2d 853 (1970) (holding that the fact that a pistol may be inoperable does not prevent conviction under this statute, citing to *People v Williamson,* 200 Mich 342; 166 NW 917 [1918], which held an unloaded pistol does not preclude a conviction under the statute). However, we believe that this interpretation of the concealed weapons statute is too broad and not fully justified in light of the purpose and intent of the statute.

It is well established that criminal statutes must be strictly construed. See, e.g., *People v Crousore,* 159 Mich App 304, 310; 406 NW2d 280 (1987). This rule is most often employed in determining what actions come within the scope of a statutory prohibition. *Id.* The rule of strict construction of criminal statutes reflects the idea that it is the responsibility of the Legislature to define criminal offenses. *Id.* To that end, our interpretation of the statute recognizes that there are differences between an unloaded and an inoperable firearm.

Again, "pistol" is defined as a "firearm" which is *loaded or unloaded.* MCL 750.222(a); MSA 28.419(a). We believe that it was eminently reasonable for the Legislature to declare that an *unloaded* firearm falls within the concealed weapons statute. For example, a pistol may be carried by a defendant in one pocket with the ammunition in another. Under that scenario, the firearm could be loaded in seconds and used as a deadly weapon.

Had the Legislature not included unloaded firearms within the statute, anyone would be able to circumvent the statute by merely unloading their firearm and yet carry the live ammunition separate from the firearm. By the same token, there are guns which can easily be broken down into separate, inoperable components. For the same reasons that an unloaded pistol is proscribed by the Legislature, we believe that inoperable firearms which can readily be made operable should be considered proscribed by the concealed weapons statute. However, to hold that *all* inoperable firearms fall within the definition of "pistol" too loosely construes the statute.

In this case, it is undisputed that the "pistol" defendant had in his possession was inoperable in that it was totally incapable of propelling a dangerous projectile. The hammer was broken in half. Moreover, defendant could not have readily made the pistol operable. That being the case, we believe that the proper interpretation of the statute leads to the conclusion that defendant was simply not carrying a concealed "pistol" or "firearm" as currently defined by the Legislature.

We note that our interpretation of the statute is not without support. Now Supreme Court Justice CAVANAGH first advocated such an interpretation in his dissent in *Sanchez, supra,* p 567. He stated:

> The "pistol" taken from defendant in this case [which had a broken or jammed firing pin] should not fall under the concealed weapons statute. It is not a firearm since it did not meet the statutory definition of being capable of propelling a dangerous projectile, MCL 8.3t; MSA 2.212(20), nor could it have been altered within a reasonably short time to do so. See also MCL 750.222; MSA 28.419 and MCL 752.841; MSA 28.436(11). It is incumbent upon this Court to construe penal statutes strictly

and in a manner most favorable to the accused. *People v Stevens, supra,* 432 [92 Mich App 427; 285 NW2d 316 (1979)] and the cases cited therein.

Based on the foregoing, we hold that a "pistol" as defined under the concealed weapons statute must be an operable pistol; that is, the pistol must be capable of propelling the requisite-sized dangerous projectile or be able to be altered to do so within a reasonably short time. In this case, since defendant's pistol was not only incapable of firing a dangerous projectile, but could not be altered to do so within a reasonably short period of time, defendant's pistol was not proscribed by the concealed weapons statute. That being the case, the state was precluded from obtaining a valid conviction against defendant.

Finally, like our colleague in dissent, we are fully cognizant of the serious harm which results from the use of concealed weapons in this state. We are no more comfortable with the illegal use of weapons which kill and maim students, shopkeepers, pedestrians, and law enforcement officers than is our dissenting colleague. Nonetheless, the fact remains that in this case defendant's weapon was totally incapable of maiming or killing anyone. We are constrained to construe criminal statutes strictly. It is not for this Court to enlarge the scope of any criminal statute. Simply, it is for the Legislature to detail which weapons under the concealed weapons statute are proscribed. If the problem with the use of firearms in this state is demanding further attention and if the law should proscribe inoperable weapons in order to efficiently address the killing and maiming of citizens of this state, it is for the Legislature to amend the statute to proscribe such weapons.

Reversed.

HOLBROOK, JR., P.J., concurred.

C. O. GRATHWOHL, J. *(dissenting).* I respectfully dissent.

The definition of a pistol under the statutory scheme is "a firearm, loaded or unloaded, 30 inches or less in length, or any firearm, loaded or unloaded, which by its construction and appearance conceals it as a firearm." MCL 750.222(a); MSA 28.419(a).

The word "firearm" is defined in MCL 8.3t; MSA 2.212(20):

> The word "firearm," except as otherwise specifically defined in the statutes, shall be construed to include any weapon from which a dangerous projectile *may* be propelled by using explosives, . . . . [Emphasis added.]

The statutory definition does not require that the weapon, i.e., pistol, must be capable of propelling some dangerous projectile.

The majority opinion in *People v Sanchez,* 98 Mich App 562; 296 NW2d 312 (1980), held the distinction "meaningless" between an inoperable and an unloaded firearm and found an inoperable firearm to be a pistol within the meaning of the statute. The *Sanchez* majority agreed with *People v Jiminez,* 27 Mich App 633; 183 NW2d 853 (1970), which also held that an inoperable pistol does not prevent conviction under the statute. This interpretation of the concealed weapons statute is not too broad. Accidentally and intentionally, the discharge of concealed weapons maims and kills students, shopkeepers, pedestrians, and law enforcement officers everyday in our state. Even the dissenting opinion in *Sanchez* does not advocate adopting a bright-line rule precluding a conviction for carrying a concealed pistol when the pistol is

inoperable. The instant case may be distinguished from *In re Vaughn,* 160 Mich App 236; 408 NW2d 85 (1987), lv den 428 Mich 922 (1987). In *Vaughn,* the Court held that where several boys each carried a piece of a disassembled short-barreled shotgun, none could be convicted of carrying a concealed weapon. However, the Court left open the possibility of charging conspiracy to carry a concealed weapon. The completely disassembled state of the weapon in *Vaughn* made it readily apparent that no weapon had been concealed.

In the instant case, it appears that the pistol was inoperable only because the hammer had broken off. It is undisputed that defendant's pistol, a nine-millimeter Parabellum SWD Cobray semiautomatic pistol, had been fired shortly before defendant's arrest.

Consistent with the holdings in *Sanchez* and *Jiminez,* I would affirm.