*638 CORRIGAN, J.
We granted leave to appeal to consider whether the weapon at issue in this case constituted a “firearm” as defined in MCL 750.222(d), and thus whether defendant was properly convicted of being a felon in possession of a firearm, MCL 750.224f(l); and possession of a firearm during the commission of a felony, MCL 750.227b. We hold that the text of the statutory definition indicates that a weapon is a firearm if it is the type of weapon that was designed or intended to propel a dangerous projectile by an explosive, gas, or air. The definition describes the category of weapons that constitute a “firearm,” but it does not prescribe a requirement that the weapon be “operable” or “reasonably or readily repairable.” In other words, the design and construction of the weapon, rather than its state of operability, are relevant in determining whether it is a “firearm.”
It is not disputed that the weapon in this case is the type of weapon that propels dangerous projectiles. It thus qualifies as a firearm under the statutory definition. We therefore affirm the judgment of the Court of Appeals and affirm defendant’s convictions of felon in possession of a firearm and felony-firearm.
I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE
A jury found defendant guilty of felon in possession of a firearm and felony-firearm. Testimony at trial explored the condition of the gun found in defendant’s possession. Defendant testified that he found the gun lying in two pieces in the grass and that he picked up the pieces and put them in his pocket. Upon examining them later, he saw that there was damage and thought that the gun was inoperable.
The police officer who examined the gun when it was received into evidence testified that “the weapon did *639 not function as it was mechanically designed to function.” It was missing the firing-pin assembly, part of the slide (and the part that remained was cracked), the magazine, and some springs. He further acknowledged that without the firing-pin assembly, “you cannot fire a bullet through that weapon.”
When asked whether, despite the broken slide, a round could be fired from the gun if the missing springs as well as the firing pin were replaced, the officer responded:
To the best of my knowledge the way this slide sits right now with the broken piece I don’t even know that it would properly chamber around [sic]. The fact of the tension of the springs if it had all of the springs would probably not allow this slide to close completely anyway to actually fire it. If it had the proper stop but this portion here of the slide was broken you’d get one round off. But with the function of the weapon and the slide going to the rear and nothing to stop it that slide is going to come off....
On further examination, the officer testified, “If this weapon fired a round with the springs and without having the ejector stop, you would loose [sic] the slide. It would eject completely to the rear and you wouldn’t be able to get a second shot off.”
Without objection, the trial court provided the following instruction to the jury regarding the operability of the gun:
A handgun need not be currently operable in order to qualify as a firearm for purposes of the offenses of felon in possession of a firearm and possession of a firearm at the time of the commission or attempted commission of a felony.
When the jury requested further clarification of what constitutes a firearm, the court stated:
*640 A firearm includes any weapon from which a dangerous weapon [sic] can be shot or propelled by the use of explosive gas or air. A handgun need not be currently operable in order to be qualified as a firearm for the purposes of felon in possession of a firearm and possession of a firearm at the time of a commission or attempted commission of a felony.
Defendant did not object to this instruction.
The jury returned a verdict of guilty on both counts of felon in possession of a firearm and felony-firearm. The Court of Appeals affirmed defendant’s convictions.[1]
II. STANDARD OF REVIEW
This case requires us to interpret the definition of “firearm” contained in MCL 750.222(d). We review de novo questions of statutory construction. People v Perkins, 473 Mich 626, 630; 703 NW2d 448 (2005).
III. ANALYSIS
Initially, we note that both offenses of which defendant stands convicted, felon in possession of a firearm and felony-firearm, require proof that the defendant possessed a “firearm.” The Legislature has defined that term in MCL 750.222(d):
“Firearm” means a weapon from which a dangerous projectile may be propelled by an explosive, or by gas or air. Firearm does not include a smooth bore rifle or handgun designed and manufactured exclusively for propelling by a spring, or by gas or air, BB’s not exceeding .177 caliber. [Emphasis added.]
On appeal, the sole challenge to defendant’s convictions is that the weapon found in his possession was in such *641 a state of disrepair that it could not constitute a “firearm” as defined in MCL 750.222(d).
It is readily apparent that the key question in construing MCL 750.222(d) is the meaning of the word “may” in the phrase, “a dangerous projectile may be propelled... .” Where, as here, a statute does not contain internal definitions of terms used in it, we give terms their ordinary meaning. Title Office, Inc v Van Buren Co Treasurer, 469 Mich 516, 522; 676 NW2d 207 (2004). In such instances, it is often helpful to consult dictionary definitions. Id. Random House Webster’s College Dictionary (1997) lists a number of definitions for “may” as an auxiliary verb:
1. (used to express possibility)... 2. (used to express opportunity or permission)... 3. (used to express contingency, esp. in clauses indicating condition, concession, purpose, result , etc.)... 4. (used to express wish or prayer)... 5. (used to express ability or power.)....
Reviewing these definitions in the context of the statute, it seems that the third and fourth definitions are more compatible with the understanding that a weapon is a firearm if it was designed or intended to propel a dangerous projectile. The words “purpose,” “wish,” and “prayer” connote intention, aim, or planning. In other words, these definitions are consonant with the idea that a weapon is a firearm if that was the intent or design of its creator.
The first, second, and fifth definitions, meanwhile, seem more compatible with the understanding that a weapon is a firearm if it possesses the ability to propel a dangerous projectile. The words “opportunity,” “possibility,” “ability,” and “power” connote capability or capacity. In other words, these definitions are consonant with the idea that a weapon is a firearm if it has the ability or power to fire a projectile.
*642 Because both of these meanings are plausible given the use of “may” in the statute, we are required to make a determination as to which meaning is most representative of the Legislature’s intent. As will be discussed below, we conclude that the offenses of which defendant was convicted do not require proof that the firearm was “operable” or “reasonably or readily operable.” Rather, the statute requires only that the weapon be of a type that is designed or intended to propel a dangerous projectile.[2]
We reach this conclusion on the basis of several considerations. Initially, to the extent that the “may” clause serves as a restrictive clause, narrowing the class of “weapons” that are included within MCL 750.222(d), as we understand it to do,[3] we believe it is more reasonable to view this clause as differentiating between weapons generally and a specific subclass of weapons, rather than as differentiating between weapons generally and a specific subclass of weapons and also between weapons that are operable and weapons that are not.
Moreover, a definition of “may” that is focused on operability would produce results that we believe are unlikely to have been within the contemplation of the *643 Legislature in defining “firearm.” Consider by way of illustration, a length of narrow metal pipe that could be considered a weapon, given its potential for bludgeoning. Were “may” not to encompass some design component, it is conceivable that even a simple pipe could constitute a “firearm,” something that is difficult to reconcile with the fact that it is a “firearm” that is the object of the “may” clause.
Next, the “operability” definition of “may” would enable a felon to possibly avoid prosecution by the simple expedients of separating his firearm into separate parts, hiding a critical part of the firearm, or discarding the firearm immediately after being seen possessing it so that its level of operability could not be determined. Given the manifest purpose of the instant statute as reflected in its text, this would impede firearms prosecutions for reasons that seem altogether arbitrary and irrational.
It is also noteworthy that in several instances, the Legislature has defined “dangerous weapon” to include a “loaded or unloaded firearm, whether operable or inoperable.” See, e.g., MCL 750.110a(l)(b)(i); MCL 600.606(2)(b)(i); MCL 766.14(4)(b)(i) (emphasis added). While these statutes do not fall within the “firearms” chapter of the Michigan Penal Code, they are instructive on the Legislature’s understanding of what constitutes a “firearm.” If, as the dissent posits, “firearm” included an operability requirement, defining “dangerous weapon” to include a firearm “whether operable or inoperable” would be redundant. “[T]his Court should interpret a statute to ensure that an interpretation of one provision does not render another superfluous in a substantial number of cases.” Western Michigan Univ Bd of Control v Michigan, 455 Mich 531, 551-552; 565 NW2d 828 (1997).[4]
*644 Further, as between the absence of express language in the statute that either references an operability or a design requirement, we believe that the absence of the former is more telling in light of the very next sentence of MCL 750.222(d), which defines a “firearm” in further detail in terms of what it was “designed” and “manufactured” to do. Weapons from which a projectile “may” be propelled are a subclass of weapons generally; because the Legislature only excluded from that subclass weapons “designed and manufactured exclusively for propelling. . . BB’s,” necessarily those weapons remaining in the subclass were “designed and manufactured” to propel a “dangerous projectile” other than BB’s. Because the Legislature chose to focus on design in limiting the subclass of weapons that constitute firearms, it is reasonable to conclude that the Legislature focused on design in creating that subclass in the first instance. Put differently, the Legislature’s use of “designed and manufactured” in the second sentence of the statute is telling with regard to which definition of “may” it intended in the first sentence. It seems apparent that the design — and not the current *645 operability — of a weapon was of paramount importance to the Legislature in defining what constitutes a “firearm.”[5]
Although the defendant relies on People v Hill, 433 Mich 464, 472-473; 446 NW2d 140 (1989), the holding in Hill, according to the Hill Court itself, does not apply to the offenses in this case. In Hill, two defendants were charged with possession of the same short-barreled shotgun, MCL 750.224b. Each defendant had possessed one of the two component parts that constituted the short-barreled shotgun. This Court ruled that the charges could go forward because “the fact that a firearm is temporarily inoperable does not preclude prosecution for its possession where the statute expressly prohibits such possession.” Hill, 433 Mich 466. This Court explained that “temporarily inoperable firearms which can be made operable within a reasonable time fall within the purview of the statutes that govern the use and possession of firearms.” Id. at 477. This Court then qualified its holding, however, by explaining that it did “not purport to interpret the concealed weapon statute or the felony-firearm statute.” Id., n 13. The felon-in-possession statute had not yet been enacted when Hill was decided. Thus, Hill is not instructive because its holding appears limited to the offense at issue in that case, possession of a short-barreled shotgun.
The narrow reach of Hill is further clarified by a long line of Court of Appeals decisions holding that the felony-firearm statute does not require proof of operability. Indeed, the Hill Court itself cited and discussed *646 many of those cases, without disapproving their holdings in any respect. The Hill Court explained:
[C]ourts have held that it is unnecessary to prove the operability of a weapon as an element of a prosecution of possession of a firearm during the commission of a felony because this would be “ ‘inconsistent with the legislative intent of discouraging the practice of carrying guns in circumstances where harm is apt to occur.’ ” People v Jackson, 108 Mich App 346, 350; 310 NW2d 238 (1981), citing with approval [People v Gibson, 94 Mich App 172, 177; 288 NW2d 366 (1979), rev’d on other grounds 411 Mich 993 (1981)]. [Hill, 433 Mich 475.]
The Hill Court further stated:
Other panels holding that the operability of a firearm is not necessary for the prosecution of a felony-firearm charge include: People v Garrett, 161 Mich App 649; 411 NW2d 812 (1987), lv den 430 Mich 856 (1988); People v Poindexter, 138 Mich App 322; 361 NW2d 346 (1984); People v Brooks, 135 Mich App 193; 353 NW2d 118 (1984); People v Broach, 126 Mich App 711; 337 NW2d 642 (1983). [Hill, 433 Mich 475 n 9.]
In short, it is telling that (1) the Hill Court cited and discussed a long line of Court of Appeals case law holding that operability is not a requirement of a felony-firearm prosecution, (2) the Hill Court did not express any disapproval of the Court of Appeals decisions, and (3) the Hill Court expressly stated that it was not purporting to interpret the concealed weapons statute or the felony-firearm statute. Hill by its own terms does not support its expansion to the offenses of felony-firearm and felon in possession of a firearm. Hill thus provides no basis to reject the Court of Appeals longstanding view that proof of operability is not required.
Moreover, after the Hill decision, the Court of Appeals has continued to hold that proof of operability is *647 not required in felony-firearm cases. In People v Thompson, 189 Mich App 85; 472 NW2d 11 (1991), the defendant argued that his felony-firearm conviction could not stand because the hammer of his handgun was broken, thus rendering it inoperable. The Court of Appeals rejected the defendant’s argument: “Operability is not and has never been an element of felony-firearm. People v Poindexter, 138 Mich App 322, 333; 361 NW2d 346 (1984); see also People v Garrett, 161 Mich App 649, 653; 411 NW2d 812 (1987), and People v Pierce, 119 Mich App 780; 327 NW2d 359 (1982).” Thompson, 189 Mich App 86. The Thompson Court noted that “[i]t has long been the practice of this Court to apply a reasonable interpretation of the felony-firearm statute in order to sustain the deterrent effect intended by the Legislature. See [Hill, 435 Mich 473-477] ” Thompson, 189 Mich App 86-87.
In addition, the Court of Appeals has held, after Hill, that proof of operability is not required to establish the offense of felon in possession of a firearm. In People v Brown, 249 Mich App 382; 642 NW2d 382 (2002), the Court of Appeals noted that various meanings had been accorded to the term “firearm,” depending on the offense with which the defendant had been charged. In the context of the concealed weapons statute, MCL 750.227, the Court of Appeals had held that an inoperable handgun was not a “firearm.” See People v Parr, 197 Mich App 41, 45; 494 NW2d 768 (1992), People v Gardner, 194 Mich App 652, 654; 487 NW2d 515 (1992), and People v Huizenga, 176 Mich App 800, 804-805; 439 NW2d 922 (1989). But in the context of the felony-firearm statute, the Brown Court noted that Court of Appeals case law does not require proof of operability. See Thompson, supra-, Garrett, supra-, and Poindexter, supra. The Brown Court concluded “that the Thompson *648 analysis, first applied to felony-firearm cases, should also be applied to felon in possession cases.” Brown, 249 Mich App 384-385.
To support its conclusion, the Brown Court took note of MCL 750.2, which provides that the “rule that a penal statute is to be strictly construed shall not apply” to the provisions of the Michigan Penal Code, which “shall be construed according to the fair import of their terms, to promote justice and to effect the objects of the law.” Turning to the definition of “firearm” in MCL 750.222(d), which provides that a “firearm” is “a weapon from which a dangerous projectile may be propelled” (emphasis added), the Brown Court concluded “that a handgun that is designed to expel a dangerous projectile, and that could do so but for a missing firing pin and spring, qualifies under MCL 750.222(b) as a weapon from which a dangerous projectile may be propelled.” Brown, 249 Mich App 386.
The statutory language is broad and is clearly intended to keep any and all handguns out of the hands of convicted felons. In our opinion, a handgun need not be currently operable in order to qualify as a “firearm” for purposes of the felon in possession statute. If that were the case, then convicted felons could legitimately purchase, sell, receive, and distribute handguns on a regular basis, as long as the firing pins had been temporarily removed from those handguns. We cannot conclude that the Legislature intended such a result when it drafted the felon in possession statute. [Id.]
The Brown Court further rejected the defendant’s argument that this Court’s decision in Hill mandated a holding that an inoperable handgun was not a “firearm” for purposes of the felon in possession statute:
We conclude that our holding in the instant case is consistent with the Hill decision, in which the Court noted the “legislative intent to distinguish the firearm from other *649 potentially dangerous weapons,” and cited appellate decisions which “found the operability of a gun to be irrelevant for a conviction [because] a contrary result would thwart the deterrent purpose” of the laws concerning the use and possession of firearms. [Hill, 433 Mich] 476, quoting People v Boswell, 95 Mich App 405, 408-409; 291 NW2d 57 (1980). [Brown, 249 Mich 387.]
In short, the Brown Court explained why its holding was consistent with Hill. We find no basis in Hill to question the Brown Court’s analysis or the Court of Appeals longstanding interpretation of “firearm.”
Of the long line of cases left undisturbed by Hill, a case that offers particularly useful analysis is Boswell, supra. In that case, the defendant pleaded guilty of armed robbery, MCL 750.529; and felony-firearm. On appeal, he argued that the gun used in the robbery was temporarily inoperable because it was “jammed” and thus was not a “firearm” under the definition contained in MCL 8.3t. MCL 8.3t defines “firearm” in a manner that is very similar to the definition contained in MCL 750.222(d). Specifically, MCL 8.3t provides that a “firearm” is “any weapon from which a dangerous projectile may be propelled by using explosives, gas or air as a means of propulsion, except any smooth bore rifle or handgun designed and manufactured exclusively for propelling BB’s not exceeding .177 caliber by means of spring, gas or air.”
The Boswell Court explained its interpretation of the statutory definition:
We believe the statute demonstrates a legislative intent to distinguish the firearm from other potentially dangerous weapons by describing its general construction and manner of use. The gun used in the instant case clearly falls within the above definition. Furthermore, this Court found the operability of a gun to be irrelevant for a conviction under MCL 750.227; MSA 28.424, carrying a concealed weapon, *650 in People v Clark, 24 Mich App 440; 180 NW2d 342 (1970), and People v Jiminez, 27 Mich App 633; 183 NW2d 853 (1970). The same reasoning is equally apt here, and a contrary result would thwart the deterrent purpose of the felony-firearm statute. [Boswell, 95 Mich App 409 (emphasis added).]
The Boswell analysis is useful in analyzing the text of the provision at issue here, MCL 750.222(d). The statute defines a “firearm” as “a weapon from which a dangerous projectile may be propelled by an explosive, or by gas or air.” This language serves to distinguish firearms, which are a particular type of weapon, from weapons generally. A firearm is designed and used to expel dangerous projectiles by an explosive, gas, or air. By contrast, other weapons, such as knives and clubs, are not designed or used in this manner. It is the design and construction of a firearm, rather than its current state of operability, that distinguish it from other weapons.
We decline to insert an operability requirement into the statute. We can find no basis to conclude that the phrase “may be propelled” somehow requires that the weapon be reasonably and readily operable. The statute simply does not contain any language supporting such a rule. In short, the statutory definition of “firearm” is descriptive. It describes the type of weapon that constitutes a “firearm,” so as to distinguish it from other types of weapons. It does not require the current operability of the weapon.
This conclusion is supported by definitions of other terms contained in MCL 750.222. The surrounding provisions use the term “firearm” as a predicate or base term to define specific types of firearms. Thus, the term “firearm” is used to define the terms “pistol,” MCL 750.222(e); “shotgun,” MCL 750.222(h); and “rifle,” MCL 750.222(j). This use of “firearm” to define other, *651 more specific types of firearms explains why the Legislature used general language to describe the manner of use or operation of a “firearm,” i.e., that it is “a weapon from which a dangerous projectile may be propelled,” so that the Legislature could then use this general descriptive term to define more specific types of firearms. We are bound to accord this clear meaning to the statutory text rather than invent an operability requirement that simply is not there.[6]
Our conclusion is further supported by a key difference between the language used to define “firearm” in MCL 750.222(d) and the language used in another definition of that term in MCL 752.841. The latter statutory definition applies to offenses that prescribe the duties of a person who discharges a firearm and *652 thereby injures another person. For purposes of those offenses, MCL 752.841 defines the word “firearm” as “any weapon or device from which is propelled any missile, projectile, bullet, shot, pellet or other mass by means of explosives, compressed air or gas or by means of springs, levers or other mechanical device.” (Emphasis added.) MCL 752.841 makes clear that the Legislature knows how to define a “firearm” as a weapon from which a projectile “is propelled.” We believe that the Legislature would not have used the phrase “may be propelled” in MCL 750.222(d) to require operability when it could have instead used the phrase “is propelled” as it did in MCL 752.841.
Therefore, because we can find no textual support for an operability requirement, we must adhere to the Legislature’s judgment not to adopt such a rule.[7]
Moreover, were we to extend Hill’s operability requirement to the crimes of felon in possession and felony-firearm, it could well encourage defendants to discard or secrete their weapons in order to impede the prosecution from being able to prove that the weapon could reasonably and readily be made to fire, or to separate their weapons into multiple parts for the same *653 purpose. After disposing of or hiding the weapon, the defendant or — if the defendant did not wish to testify — a defense witness could simply take the stand and testify that the gun was inoperable, and the prosecution would then have no means to establish the contrary beyond a reasonable doubt. Id.[8]
Indeed, our Court of Appeals made this very point in Pierce, 119 Mich App 782-783:
If the prosecution must prove operability, a defendant could not be convicted of felony-firearm if the gun is never recovered even if the victim testifies that he saw the gun. A prime concern behind the felony-firearm statute is to protect the victim. The victim is no less frightened if the gun (most likely unknown to him) just happens to be inoperable. The state clearly intends to protect such a victim. [Citation omitted.]
An extratextual operability requirement would also undermine the legislative intent to deter the possession of firearms by convicted felons and by persons committing felonies. That a gun is inoperable does not alleviate the-extreme danger posed by its possession in these circumstances.
In short, expanding an operability requirement to the offenses of felony-firearm and felon in possession of a firearm would defeat the fundamental legislative interest in deterring the possession of firearms.[9] *654 Whether operable or not, firearms pose a grave danger to members of the public when they are possessed by convicted felons or persons committing felonies.
IV RESPONSE TO THE DISSENT
In her dissent, Justice KELLY articulates her preferred interpretation of the statutory definition of “firearm” as containing an operability requirement. Justice KELLY then asserts that because the majority does not adopt her interpretation, we have somehow abandoned our judicial philosophy of applying the plain meaning of a statutoiy text. Post at 669. She further contends that we have violated our “ ‘plain text philosophy,’ ” post at 671, because, unlike Justice Kelly, we have not focused our analysis on a federal statute that has no application to this case.
It should go without saying that our judicial philosophy does not require every member of this Court to agree with Justice KELLY’s interpretation of a text. It is therefore unfortunate that Justice KELLY has resorted to the classic logical fallacy of a false choice: she seems to contend that we must either (1) agree with her interpretation of the text or (2) abandon our entire philosophy. We decline to dignify this argumentative sleight of hand by further responding to it, other than to emphasize that we have endeavored to apply the text as written and that we stand by our interpretative analysis as set forth above.
*655 Justice KELLY also argues that the rule of lenity and the constitutional principle of fair warning require us to construe the statute in favor of the defendant. Yet Justice KELLY herself has recently acknowledged in another case that “fair warning is given only if an ambiguity in a criminal statute is construed to apply to conduct that the statute clearly designates as criminal.” People v Yamat, 475 Mich 49, 66; 714 NW2d 335 (2006) (Kelly, J., dissenting), citing United States v Lanier, 520 US 259, 266; 117 S Ct 1219; 137 L Ed 2d 432 (1997). Despite her recent observation in Yamat, Justice KELLY here has failed to identify an ambiguity in the statutory definition of “firearm.”
As discussed, we believe the statutory definition of “firearm” is clear. MCL 750.222(d) plainly provides that a weapon is a firearm if it is the type of weapon that propels dangerous projectiles by an explosive or by gas or air. Moreover, as noted earlier, the existing Court of Appeals case law provides that inoperability is not a defense to either felony-firearm or felon in possession of a firearm. See Thompson and Brown and the cases they cite.
Amazingly, Justice Kelly relies for her fair warning argument on Hill, in which this Court (1) addressed an offense, possession of a short-barreled shotgun, that is not at issue in this case, (2) expressly declined to extend its holding to felony-firearm, and (3) acknowledged the Court of Appeals longstanding interpretation of the felony-firearm statute as not containing an inoperability defense. Justice Kelly’s fair warning argument thus collapses of its own weight in light of her reliance on Hill.
V CONCLUSION
The presence of the word “may” in MCL 750.222(d) indicates the Legislature’s intention that a weapon be *656 considered a firearm if it was designed or intended to propel a dangerous projectile by means of an explosive, gas, or air. In the absence of a legislative enactment of an operability requirement, we hold that there is no operability requirement for the offenses of felony-firearm and felon in possession of a firearm. Because there is no dispute that the weapon possessed by defendant in this case was the type of weapon that was designed to propel a dangerous projectile by an explosive, gas, or air, we affirm the judgment of the Court of Appeals and affirm defendant’s convictions of felony-firearm and felon in possession of a firearm.
Taylor, C. J., and Young and MARKMAN, JJ., concurred with Corrigan, J.

 People v Peals, unpublished memorandum opinion of the Court of Appeals, issued February 15, 2005 (Docket No. 251406).

 Justice Kelly suggests that because we believe that there are two plausible meanings to the statute at issue we must construe it in favor of the defendant. Post at 676. We note, however, that penal laws “are not to be construed so strictly as to defeat the obvious intention of the legislature.” United States v Wiltberger, 18 US (5 Wheat) 76, 95; 5 L Ed 37 (1820). “The maxim is not to be so applied as to narrow the words of the statute to the exclusion of cases which those words, in their ordinary acceptation, or in that sense in which the legislature has obviously used them, would comprehend.” Id. Because we believe that the words of the statute as a whole indicate an intent to include a broad definition, the rule of lenity does not force us to choose the stricter definition.

 Restrictive clauses are not set off by commas. Strunk & White, Elements of Style (3d ed) (New York: MacMillan Publishing Company, 1979), p 4.

 Justice Kelly takes the opposite approach, suggesting that if “firearm” does not include an operability requirement, defining “dangerous *644 weapon” in MCL 750.110a to include a firearm “whether operable or inoperable” would be redundant. While at first blush, this may seem reasonable, we believe further consideration reveals ours to be the better analysis. As noted, MCL 750.110a(l)(b)(i) refers to a “loaded or unloaded firearm, whether operable or inoperable.” If, as Justice Kelly suggests, our construction of “firearm” renders the phrase “whether operable or inoperable” redundant, we note that her construction renders both the phrases “loaded or unloaded” and “whether operable or inoperable” redundant. After all, under her operability definition of “firearm,” an unloaded gun would not be able to propel a projectile (as it has none to propel), and would therefore technically be inoperable. In that sense, then, her definition of “firearm” would render multiple clauses of MCL 750.110a redundant. Even if we agreed with her — which we do not — that our interpretation of “firearm” created a redundancy in MCL 750.110a, such interpretation would still be the better of the two constructions because it would result in fewer redundancies.

 Contrary to Justice Kelly’s assertion, we do not “ask[] the reader to ignore the difference^] in these sentences.” Post at 674. Rather, we ask the reader to view the statute logically as a cohesive whole and not to artificially separate its component sentences.

 Although it is not necessary to our analysis, we note that the New Jersey Supreme Court has construed very similar statutory language as not requiring proof of operability. In State v Gantt, 101 NJ 573; 503 A2d 849 (1986), the court interpreted a statutory definition of “firearm” that referred to “ ‘any gun, device or instrument in the nature of a weapon from which may be fired, or ejected any solid projectable ball, slug, pellet, missile or bullet, or any gas, vapor or other noxious thing, by means of a cartridge or shell or by the action of an explosive or the igniting of flammable or explosive substances.’ ” Id. at 582 (emphasis added). The New Jersey Supreme Court held that the statutory phrase “ ‘from which may he fired’ ” did not require proof of operability. Rather, the Court concluded that the statute merely required proof that the weapon was originally designed to deliver a lethal force.
See also Williams v State, 61 Ga 417, 418 (1878):
An object once a pistol does not cease to he by becoming temporarily inefficient. Its order and condition may vary from time to time, without changing its essential nature or character. Its machinery may be more or less perfect; at one time it may be loaded, at another empty; it may be capped or uncapped; it may be easy to discharge or difficult to discharge, or not capable, for the time, of being discharged at all; still, while it retains the general characteristics and appearance of a pistol, it is a pistol, and so in common speech would it be denominated.

 While the statute does not contain an operability requirement, it is possible that a firearm could be so substantially redesigned or altered that it would cease to be a “firearm” under the statutory definition. It would no longer be a weapon whose design was such that a dangerous projectile “may be propelled” by an explosive, gas, or air. For example, an antique cannon plugged with cement on display in a park would not constitute a “firearm” under MCL 750.222(d). That is because the cannon has been converted into an ornamental display, and it is no longer the type of weapon that is used or designed to propel dangerous projectiles by an explosive or by gas or air. We emphasize, however, that the operability of the weapon is not the statutory test; rather, the question is whether the weapon has been so substantially redesigned or altered that it no longer falls within the category of weapons described in MCL 750.222(d).

 See also State v Gantt, 101 NJ 586 (stating that an operability requirement “would invariably invite assertions of inoperability by defendants hopeful of gaining some advantage in the murky waters of law characteristic of rebuttable presumptions and shifting burdens of proof”).

 In an appropriate case, this Court’s holding in Hill may require reexamination. We decline to overrule Hill in this case because: (1) the defendant in Hill was convicted of an offense, possession of a short-barreled shotgun, that is not at issue here; (2) the definition of “firearm” construed in Hill, while very similar to the definition here, is located in *654 a different statutory section, MCL 8.3t; (3) the Hill Court narrowed its holding considerably by declining to construe the term “firearm” for other firearms offenses; and (4) the Hill Court discussed the Court of Appeals longstanding construction of the term “firearm” in the felony-firearm context without expressing any disapproval of that construction. Nonetheless, we recognize that an argument can be made that the term “firearm” should have the same meaning for different offenses, and we will consider this issue further when and if it arises in an appropriate case.