**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**John C. RIETZKE, Defendant–
Appellant.**

No. 01–1802.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 24, 2001.

Decided Feb. 4, 2002.

Michelle L. Jacobs (argued), Office of the U.S. Atty., Milwaukee, WI, for Plaintiff-Appellee.

Kathryn A. Keppel, Thomas E. Brown (argued), Gimbel, Reilly, Guerin & Brown, Milwaukee, WI, for Defendant-Appellant.

Before WOOD, Jr., COFFEY, and EASTERBROOK, Circuit Judges.

COFFEY, Circuit Judge.

John Rietzke, a federally licensed fire-arms dealer, operated Grassel's Guns in Greenfield, Wisconsin, and was arrested after selling guns to a convicted felon thru a straw purchaser, an undercover agent of the Bureau of Alcohol, Tobacco, and Fire-arms (ATF). Rietzke pleaded guilty to one count of "willfully fail[ing] to keep records of the name, age and place of residence of" the person to whom he had sold or delivered a firearm, contrary to 18 U.S.C. § 922(b)(5) & 18 U.S.C. § 924(a)(1)(D). In his plea agreement Rietzke preserved the right to appeal the trial judge's decision to convict and sen-tence him under the statute's felony provi-sion instead of its misdemeanor pro vision, which he contends was created for the purpose of treating licensed firearms deal-ers more leniently, and he now so appeals. We affirm.

## I. Factual Background

John Rietzke, a federally licensed fire-arms dealer, operated Grassel's Guns in Greenfield, Wisconsin. The Bureau of Al-cohol, Tobacco and Firearms (ATF) began investigating Rietzke after receiving infor-mation from a cooperating witness, Mitch-ell Critton, that Rietzke had been violating federal firearms laws. Critton told ATF agents that Rietzke had sold firearms to him several years before, despite knowing that Critton was a convicted felon. Crit-ton told the agents that he and Rietzke accomplished the earlier sale through the use of a "straw purchaser," someone who acts as an agent or intermediary for anoth-er who is ineligible to purchase the fire-arms directly.

On December 3, 1999, ATF sent Critton to Rietzke's store in order that he might negotiate a firearms purchase using a straw purchaser. Rietzke recognized Crit-ton from their prior dealings, and Critton reminded Rietzke of his felony record. Critton then inquired of Rietzke as to whether he could purchase a Beretta pis-tol, if he could arrange to use his girlfriend as a straw purchaser. Rietzke agreed to the arrangement and commented that he could not sell guns directly to Critton.

On December 14, 1999, Critton returned to Grassel's Guns along with Robin Broeske, an undercover ATF agent posing as his girlfriend. Critton and Rietzke dis-cussed the purchase price of the gun that Critton desired, and Rietzke produced the appropriate ATF paperwork for Broeske to complete. Rietzke specifically instruct-ed Broeske to answer all the questions on the Handgun Hotline form with a "yes," meaning that she was eligible to purchase weapons. Broeske completed the paper-work using the name "Bobbie Day," her undercover name, and Critton handed Rietzke $720 for the purchase, leaving a small balance to be paid when he took possession of the gun after the federally mandated waiting period.

On December 16, 1999, after the two-day, federally-mandated waiting period, Critton returned to the gun outlet in order to pick up the pistol. At that time Rietzke provided Critton with additional paper-work for "Bobbie" to complete. Critton left the store momentarily to request that Agent Broeske, who had been waiting in the car outside the store, return to the store with him in order that she might complete the forms and Critton receive the firearm. Upon Broeske's entry into the store, Rietzke instructed her to complete the paperwork and directed her to answer

the question in the affirmative that inquired whether she was the actual buyer of the gun. While Broeske completed the paperwork, Rietzke and Critton discussed the ammunition he desired as well as the potential purchase of additional firearms. Rietzke ultimately agreed to sell Critton an additional weapon, a MAK–90 rifle. During Rietzke's and Critton's negotiation, Broeske completed the paperwork and left the store without taking possession of the two firearms.Instead, Critton paid Rietzke the $389 balance for the weapons (which had increased due to Critton's purchase of the additional weapon) and took possession of and exited the store with both the Beretta pistol as well as the MAK–90 rifle.

During February and March 2000, Rietzke agreed to sell two additional guns to Critton again using "Bobbie Day" as a straw purchaser. Documents obtained during a government search warrant revealed that Rietzke retained forms completed and signed by "Bobbie Day" to purchase the two guns described herein and that Rietzke had made the proper calls confirming that "Bobbie Day" was not a convicted felon.

A grand jury sitting in the Eastern District of Wisconsin on May 2, 2000, returned a four-count indictment against Rietzke. Counts one and three charged Rietzke with knowingly selling firearms to a convicted felon, 18 U.S.C. § 922(d), and counts two and four charged him with "*willfully* fail[ing] to keep records of the name, age and place of residence of" the person to whom he sold firearms, 18 U.S.C. § 922(b)(5) & 18 U.S.C. § 924(a)(1)(D). On May 30, 2000, Rietzke moved to dismiss the indictment, arguing that it failed to adequately set forth facts that constituted a felony violation. In his motion, Rietzke argued that, because he was a licensed firearms dealer, § 922(b)(5) was punishable only as a misdemeanor and that § 922(d) did not prohibit the sale to convicted felons using straw purchasers. In her report the magistrate judge recommended to the trial judge that the defendant's motion be denied and the trial judge adopted her recommendation. The judge emphasized that the charge to which Rietzke pleaded was for willful violations of gun control laws, which required a proof element different from those found in 18 U.S.C. § 924(a)(3) and 18 U.S.C. § 924(a)(1)(A). On August 30, 2000, Rietzke entered a conditional plea agreement in which he pleaded guilty to count two of the indictment[1] but reserved the right to challenge the trial judge's determination that the offense of conviction was a felony rather than a misdemeanor.

## II. Issue

On appeal, Rietzke claims that the trial judge committed error in punishing him under the felony provision of § 924(a)(1)(D) for willful failure to maintain records contrary to § 922(b)(5), rather than under the misdemeanor provision of § 924(a)(3) for being a licensed dealer who knowingly makes a false statement or representation with respect to the information required to be kept in his records. We review de novo the trial judge's interpretation of the statutory scheme. *United States v. Hoogenboom*, 209 F.3d 665, 669 (7th Cir.2000).

## III. Analysis

Licensed firearms dealers are required to maintain records of the persons to whom they sell or deliver weapons. Rietzke was convicted of violating

---

1. As part of the terms of the plea agreement, the government agreed to dismiss the other three counts at the time of sentencing, though the court could consider them at the time of sentencing.

§ 922(b)(5), which provides in pertinent part:

It shall be unlawful for any ... licensed dealer ... to sell or deliver ... (5) any firearm ... to any person unless the licensee notes in his records, required to be kept pursuant to section 923 of this chapter, the name, age, and place of residence of such person....

Section 922(b)(5) does not itself contain a penalty provision. Instead, the penalty provision can be found in § 924(a), which contains both a felony and a misdemeanor provision. The felony provision, § 924(a)(1), provides that:

(a)(1)Except as otherwise provided in this subsection, subsection (b), (c), or (f) of this section, or in section 929, whoever—

(A) knowingly makes any false statement or representation with respect to the information required by this chapter to be kept in the records of a person licensed under this chapter ...;

(D) *willfully* violates any other provision of this chapter,

shall be fined under this title, imprisoned not more than five years, or both....

On the other hand, § 924(a)(3) provides for misdemeanor penalties for licensed dealers who "*knowingly* make[ ] any false statement or representation with respect to the information required by the provisions of this chapter to be in the records of a person licensed under this chapter...."

Rietzke argues that by enacting § 924(a)(3) Congress elected to punish firearms dealers who violate § 922(b)(5) more leniently than other individuals, pointing out that § 924(a)(3) punishes violations of § 922(b)(5) as misdemeanors while § 924(a)(1)(A) punishes the same violations as felonies. Rietzke assumes that, because § 924(a)(3) and § 924(a)(1)(A)

punish identical conduct, Congress therefore intended to limit prosecutorial discretion in selecting un der which provision of the statute to prosecute licensed firearms dealers. Rietzke supports his argument by pointing to *United States v. Wegg,* 919 F.Supp. 898, 901 (E.D.Va.1996), which ruled that § 924(a)(3) carved an exception for licensed firearms dealers and thus firearms dealers who violate § 922(b)(5) must be punished under the misdemeanor provision rather than the felony provision of the statute. Wegg reasoned that because the statute described "an offense generally and attribute[d] felony punishment to all violators except for an excepted group ... those in the excepted group may only be prosecuted for the misdemeanor." *Wegg,* 919 F.Supp. at 903.

Of course *Wegg* carries no binding authority, nor do we even find it remotely persuasive. A reading of *Wegg* reveals that the defendant was convicted of *aiding and abetting* in the making of false statements with respect to a firearms transaction, and not a willful failure to keep records. *See Wegg,* 919 F.Supp. at 899. Rietzke urges us to conclude that his behavior was similar to that of the defendant in *Wegg* and argues that he did keep the required records—albeit a record he admittedly knew to be false—because he made a record reflecting that "Bobbie Day" was the purchaser of the guns. But § 922(b)(5) makes it unlawful for a licensed dealer to "sell or *deliver*" a firearm to any person "unless the licensee notes in his records ... the name, age, and place of residence of *such person....*" 18 U.S.C. § 922(b)(5) (emphasis added). Although Rietzke made a false statement in his records that he *sold* two firearms to "Bobbie Day," he failed to make any record whatsoever regarding Mitchell Critton, the person to whom he *delivered* the weapons, from whom he received payments of $720 and $389, and whom he well knew to be

the actual purchaser of the two guns referred to herein. *Cf. United States v. Choice*, 201 F.3d 837, 841 (6th Cir.2000) (discussing the difference between cases in which the defendant is charged with falsifying a record and cases in which the defendant fails to keep records). The prosecutor, relying on the plain language of the statute, did exercise prosecutorial discretion and charged Rietzke with a violation of the felony provision contained in § 924(a)(1)(D), for willfully failing to keep a record regarding his sale of weapons and their delivery to Critton.

In any event, it matters little that Rietzke now characterizes his conduct as making a false record because the plea agreement, which he knowingly and voluntarily signed, and the indictment under which he was charged plainly charged him with the "willful failure to keep records" regarding the person to whom he sold or delivered firearms. During the plea colloquy, the government asserted in its offer a proof that Rietzke failed to make any records for the firearms he delivered to Mitchell Critton other than the false records he made reflecting that "Bobbie Day" purchased the weapons, in spite of the fact that he well knew he was required by law to create a record for Critton. Thus, the government established a factual basis for the charge that Rietzke failed to make a record for Mitchell Critton, the person to whom he delivered and whom he knew to be the actual purchaser of the two firearms. Rietzke has not argued that his guilty plea was not knowingly and voluntarily made and thus cannot now challenge the factual basis of his plea, for a guilty plea admits, in legal effect, the facts as charged. *United States v. Robinson*, 14 F.3d 1200, 1205 (7th Cir.1994).

■ Moreover, *Wegg* is not convincing because it focused on the similarity between § 924(a)(1)(A) and § 924(a)(3), both of which punish a *knowingly* false statement with respect to the required information of § 922(b)(5). *Wegg* never did discuss, much less consider, the distinction between § 924(a)(1)(D), which requires *willful* behavior, and § 924(a)(3), which requires a lesser degree of culpability. Section 924(a)(3) prohibits licensed firearms dealers from *knowingly* making false statements or representations in violation of § 922. Section 924(a)(1)(D), on the other hand, punishes *willful* violations of § 922. "The only reasonable distinction between section 924(a)(1)'s 'knowingly' and 'willfully' standards is that the latter requires knowledge of the law." *United States v. Obiechie*, 38 F.3d 309, 315 (7th Cir.1994); *see also Bryan v. United States*, 524 U.S. 184, 193, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998). Thus in charging Rietzke under § 924(a)(1)(D) the prosecution was required to prove that Rietzke was aware of the law and that he voluntarily and intentionally violated *a known legal duty*, an element it need not have proved had he been charged under § 924(a)(3). Thus it is clear that, under the plain language of the statute, § 924(a)(1)(D)—under which Rietzke entered his plea of guilty—and § 924(a)(3) punish different conduct, and the prosecutor had the discretion to determine under which provision she wished to charge Critton.

■ Hence Rietzke's claim that he should have been charged under § 924(a)(3) is contrary to the well-established principles set forth in *United States v. Batchelder*, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979). The Supreme Court has made clear that when multiple criminal statutes apply to the same conduct, the prosecutor has the discretion to choose under which statute to proceed. 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755; *see also United States v. Lov–It*

*Creamery, Inc.*, 895 F.2d 410, 410 (7th Cir.1990). Neither is a defendant " 'entitled to choose the penalty scheme under which he will be sentenced.' " *United States v. Harbour*, 809 F.2d 384, 392 (7th Cir.1987) (quoting *Batchelder*, 442 U.S. at 125, 99 S.Ct. 2198). In this case, the prosecutor in the exercise of her prosecutorial discretion chose to charge Rietzke under the felony provision of the statute and not the misdemeanor provision, and it was within her discretion to do so.

Rietzke makes two unconvincing attempts to remove his case from the ambit of *Batchelder.* First, Rietzke argues that he should have been punished under the misdemeanor provision, rather than the felony provision, because Congress intended that firearms dealers be punished more leniently than non-dealers who also violate the statute and thus limited prosecutorial discretion by requiring that they charge licensed firearms dealers under § 924(a)(3) and not under § 922(a)(1). But nothing in the statute or its legislative history suggests such an intent. As noted earlier, § 924(a)(1)(D) requires a greater level of culpability than § 924(a)(3), willfulness. Nothing in § 924(a)(3) suggests that it is the sole provision under which a licensed firearms dealer can be charged. As such, the plain language of the statute suggests only that Congress intended to *"allow for the option* of misdemeanor prosecution for licensed dealers who make false statements on ATF forms, while leaving intact the felony prosecution structure for those ... whose flagrant and repeated actions in accepting false ATF forms from straw purchases ... warrants felony punishment." *United States v. Al–Muqsit*, 191 F.3d 928, 935 (8th Cir.1999), *judgment vacated en banc as to an unrelated defendant*, 210 F.3d 820 (2000) (emphasis added). Three of our sister circuits that have reached the issue agree. *Al–Muqsit*, 191 F.3d at 935; *Choice*, 201 F.3d at 840–841; *United States v. Jarvouhey*, 117 F.3d 440, 442 (9th Cir.1997).

■ Further, the legislative history fails to support Rietzke's argument. In the words of a sponsor, the Firearms Owners Protection Act, which added § 924(a)(3), was intended to ensure that a dealer would not be "subjected to harsh felony penalties for technical violations of the rigid record-keeping standards" of the Act. 131 Cong. Rec. 18, 187 (19850 statement of Sen. Hatch). The plain language of the statute clearly distinguishes between willful and knowing violations of the law, and the literal meaning of a statute should be overridden only in those rare cases, and this is not one of them, where that meaning is demonstrably at odds with the intentions of the drafters. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

Rietzke also argues that Batchelder does not apply because a prosecutor may not choose between two subsections of the same statute. But such a rule makes no sense, and an example will show why. The statute governing the possession and distribution of illegal drugs has numerous subsections, many of which overlap. 21 U.S.C. § 841. To suggest that a prosecutor cannot exercise discretion in the prosecution of a drug dealer who distributes 2 kilograms of heroin, and must proceed than § 841(b)(1)(B), which provides for a maximum sentence of forty years, rather than under 21 U.S.C. § 841(b)(1)(A), which provides for a maximum term of imprisonment of life, would be perverse. We are not convinced with Rietzke's argument for he has failed to offer any reason why *Batchelder* should so be limited, and we remain convinced that prosecutors must be free to determine under which statute they proceed.

### IV. Conclusion

Rietzke's argument that he should have been punished under sec. 924(a)(3) rather than under sec. 924(a)(1)(D) must fail. Prosecutors in their exercise of prosecutorial discretion are entitled to determine under which statute to proceed. In this case, the prosecutor chose to prosecute Rietzke under the applicable felony provision, rather than the misdemeanor provision.

AFFIRMED.