## PEOPLE v LANEY

Docket No. 239290. Submitted May 14, 2003, at Detroit. Decided August 7, 2003, at 9:05 A.M. Leave to appeal sought.

General A. Laney, a licensed firearms dealer, was charged in the 36th District Court with the misdemeanor offense of selling a pistol without complying with state licensing law pursuant to MCL 28.422(5) and MCL 750.223(1) after he sold a pistol to an undercover sheriff's deputy, who was acting as a "straw man" to purchase the pistol for another individual, who had accompanied the deputy to the defendant's store, but did not have a permit to purchase a gun. The deputy presented a permit to purchase the gun, and the defendant sold the pistol to the deputy, although the defendant witnessed the other man handle the pistol and provide money to the deputy to purchase the pistol. The defendant verified in writing on a statutorily required form that the deputy was the licensee or purchaser of the pistol. The defendant moved to dismiss the charge, arguing that his actions did not violate state law. The court, Donna R. Milhouse, J., dismissed the charge, concluding that the defendant had complied with the statutory obligations imposed by MCL 28.422(5) when he verified in writing that the purchaser of the pistol was the deputy, a licensee. The Wayne Circuit Court, Diane M. Hathaway, J., affirmed. The prosecution appealed by leave granted.

The Court of Appeals *held*:

Upon the sale of a pistol, MCL 28.422(5) provides that a dealer must verify on a license form "that the pistol was sold to the licensee." MCL 750.223(1) provides that "[a] person who knowingly sells a pistol without complying with [MCL 28.422] is guilty of a misdemeanor." In a prosecution under MCL 750.223, the people must prove that the defendant did not sell the pistol to a licensee. MCL 28.422(5). Under the unique facts of this case, a question of fact exists regarding whether the pistol was actually "sold to" a licensee, and this question of fact is for a jury to resolve. Allowing this case to go to the jury does not require the adoption of the federal "straw man" doctrine into Michigan jurisprudence. Rather, allowing the jury to decide who the pistol was "sold to" ensures that the fair and natural import of the "sold to" provision of MCL 28.422(5) is

enforced. To conclude otherwise would defeat the legislative scheme of gun licensure, sale verification, and retention of records, because the actual purchaser would not be made known to the authorities where the purchaser successfully uses a "straw man" to make the purchase.

Reversed and remanded for further proceedings in the district court.

NEFF, J., dissenting, stated that she disagrees with the majority's decision that the language of MCL 28.422(5) supports the defendant's criminal charge without the adoption of the federal "straw man" doctrine. The Michigan statutes, MCL 28.422 and MCL 750.223, are ambiguous with respect to what conduct is unlawful, and, contrary to the majority's conclusion, they do not plainly proscribe the defendant's actions in this case. To support the defendant's prosecution under the instant facts, the federal "straw man" doctrine would have to be applied, but because the Michigan statutes are not as broad as the analogous federal firearms statutes, application of the "straw man" doctrine is not warranted. The Michigan statutes must be construed in accordance with general principles of statutory construction and the rule of lenity that must be applied in the case of criminal statutes. Because the defendant's actions did not violate MCL 28.422(5), his conduct was not contrary to MCL 750.223(1), and the decision of the circuit court should be affirmed.

CRIMINAL LAW — GUN DEALERS — PISTOLS — VERIFICATIONS OF SALES TO LICENSEES.

For purposes of prosecuting a licensed gun dealer for selling a pistol without complying with the statute that requires the dealer to verify that the pistol was sold to a licensee, the issue of who the pistol was actually sold to is a question of fact to be resolved by the jury (MCL 28.422[5]; 750.223[1]).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *Michael E. Duggan*, Prosecuting Attorney, and *Timothy A. Baughman*, Chief of Research, Training, and Appeals, for the people.

*Chokwe Lumumba* for the defendant.

Before: MURRAY, P.J., and NEFF and TALBOT, JJ.

MURRAY, P.J. We granted leave in this case to determine whether it is a question of fact for a jury to

decide whether a licensed gun dealer violated state law by verifying that he sold a pistol to a licensee, when the facts plausibly show that the licensee was acting as a so-called "straw man" for a person unauthorized to purchase the pistol from the dealer. Because the unique facts of this case present a jury submissible issue regarding who the pistol was actually "sold to," we reverse the order of the circuit court and remand this case to the district court for further proceedings consistent with this opinion.

### I. MATERIAL FACTS AND PROCEEDINGS

Defendant was charged with the misdemeanor offense of selling a pistol without complying with state license law, MCL 28.422(5) and MCL 750.223(1). Defendant filed a motion to dismiss the charges on numerous grounds, including an argument that his actions did not constitute a violation of state law. Although the prosecution failed to file a written response to the motion, the district court held an evidentiary hearing on defendant's motion.

After the hearing, the district court issued a thorough and well-written opinion. In that opinion and order, the district court set forth the following findings of fact, which the court indicated were "undisputed":

1. At all times relevant, defendant was a federally licensed gun dealer and owner of Laney's Guns and Supplies in Detroit, Michigan (the "gun shop").

2. On April 6, 1999, undercover Wayne County Sheriff's deputies Walter Epps and Roshunda Coming [sic, Cummings], along with a then 18 year old civilian, Antonio Little, visited the gun shop. The deputies were equipped with hidden surveillance devices to capture visually (to a limited

degree) and audibly, the interaction among Epps, Coming, Little and defendant. A copy of that video taped exchange was admitted into evidence as an exhibit at the evidentiary hearing without objection.

3. Little expressed to defendant interest in purchasing a gun from his shop. Defendant asked Little if he had a permit to purchase a gun and Little indicated that he did not. Epps, however, stated that he (Epps) had a permit. Epps presented defendant with a Michigan Department of State Police application and license to purchase a pistol that appeared to be valid but which contained now admittedly fictitious identifying information unbeknownst to defendant.[1] A copy of that application/license was admitted into evidence at the evidentiary hearing without objection.

4. In response to Little's inquiry about how old one must be to obtain a gun permit, Laney explained that "I can't sell you nothing until you're 21." In response to repeated inquires by Epps about purchasing more than one gun at a time, Laney also explained that such a transaction would be against the law as he was legally allowed to make only one gun sale to a particular person every five days, regardless of how many gun permits that person might have.

5. While at the gun shop, and in his own handwriting, Epps completed a form entitled "Firearms Transaction Record Part I—Over the Counter," issued by the United States Department of Treasury Bureau of Alcohol Tobacco and Firearms. On that form Epps responded that he (under the fictitious identity as the gun license holder) was the actual buyer of the pistol that was being purchased. A copy of the completed transaction record form was admitted into evidence at the evidentiary hearing without objection.

6. Mr. Little either selected or helped select the pistol that was purchased, and actually handled the pistol during the selection process. Mr. Little attempted to give cash directly to defendant in payment for the pistol. When defendant refused to accept and indicated that the money must come from Epps, Little handed the cash to Epps who handed it to defendant.

7. Throughout the course of the transaction, defendant talked about his obligation to follow the law relating to gun sales, including not being able to sell ammunition to Little.

8. The gun license form presented by Epps at the gun shop was completed with the signature and address of the seller, the description of the pistol and the date of sale.

9. The money that Mr. Little handed to Epps for purchase of the pistol was not his own, but was prerecorded government funds. On the same day the pistol was purchased, it was conveyed to the custody of the Wayne County Sheriff's Department and tagged as evidence.

---

[1] Epps testified at the evidentiary hearing that he presented defendant with a false permit using a fictitious identity (i.e. Dino Otis Labose, birth date August 8, 1971) assigned to Epps by the Wayne County Sheriff's Department. Defendant had no reason to suspect that the gun license, which contained a purported notarized signature, and identification both presented by Epps were fictitious.

---

After making these findings of fact, the district court concluded that defendant had complied with the statutory obligations imposed by MCL 28.422, finding that he sold the pistol to Epps, a licensee and, therefore, as a matter of law, defendant had not violated MCL 750.223(1). The circuit court affirmed the dismissal of the charges for the reasons articulated by the district court.

## II. ANALYSIS

We review de novo the issue presented on appeal because the district court dismissed the charges after applying a statutory provision. *People v Premo*, 213 Mich App 406, 407-408; 540 NW2d 715 (1995), citing *People v Thomas*, 438 Mich 448, 452; 475 NW2d 288

(1991) (review of determination that facts did not fall within proscribed statutory conduct is de novo); *People v Carlson*, 466 Mich 130, 136; 644 NW2d 704 (2002) (examination of the meaning of statutory language presents a question of law that is reviewed de novo). We also must accept the trial court's factual findings unless they are clearly erroneous. *People v Gilmore*, 222 Mich App 442, 459; 564 NW2d 158 (1997).

The critical statutory language is set forth in MCL 28.422(5), which provides that a gun dealer, such as defendant, must verify on a license form "that the pistol was sold to the licensee." Subsection 5 provides that,

> [u]pon the sale of the pistol, the seller shall fill out the license forms describing the pistol sold, together with the date of sale, and sign his or her name in ink *indicating that the pistol was sold to the licensee.* The licensee shall also sign his or her name in ink indicating the purchase of the pistol from the seller. The seller may retain a copy of the license as a record of the sale of the pistol. The licensee shall return 2 copies of the license to the licensing authority within 10 days following the purchase of the pistol. [Emphasis added.[1]]

Resolution of this case involves a straightforward application of the statute to the facts of this case. The Legislature has set forth a detailed scheme addressing the sale of pistols. One desiring to purchase a pistol must first submit an application to the local commissioner or chief of police, who must issue a license if the statutory criteria are satisfied. MCL 28.422(2)-(4).

---

[1] We are led to MCL 28.422(5) by MCL 750.223(1), which provides that "[a] person who knowingly sells a pistol without complying with [MCL 28.422] is guilty of a misdemeanor . . . ."

Once granted, the licensing authority must deliver copies of the license to the licensee, MCL 28.422(4),[2] and once the licensee purchases a pistol, both the dealer and the licensee must, inter alia, verify on a form that the pistol was sold to and purchased by the licensee. MCL 28.422(5).

In a prosecution under MCL 750.223(1), the people must prove, as one of the elements of the crime, that the defendant did not sell the pistol to a licensee. MCL 28.422(5). Under the unique facts of this case, there is a material question of fact on that issue. The district court's[3] factual findings show that defendant knew Little was not a licensee, and therefore, that defendant could not lawfully sell a pistol to Little. Once it was disclosed that Epps had a license, the transaction proceeded. Little asked questions of defendant about different guns, examined different guns, and then attempted to purchase the pistol by handing defendant the money. Defendant, however, refused to take the money from Little, indicating that the money had to come from Epps. In front of defendant, Little gave his money to Epps, who in turn handed it over to defendant. Epps then filled out the paperwork.

These facts reveal a significant question for jury resolution, namely whether the pistol was actually "sold to" Epps when defendant knew that Epps was using Little's money to purchase the pistol handled by

---

[2] The statute also requires the licensing authority to retain a copy of the license for six years, and to forward a copy to the director of the Michigan Department of State Police within forty-eight hours of issuance of the license. MCL 28.422(6).

[3] Because there was evidence in the record to support the district court's findings of fact, and in particular those in paragraph six, its factual determinations were not clearly erroneous. *Gilmore, supra.*

Little and that he could not lawfully sell the pistol to
Little. As stated by the United States Court of Appeals
for the Fifth Circuit in *United States v Brooks*, 611
F2d 614, 619 (CA 5, 1980):

> [T]he statute is violated by a sham sale made to a resi-
> dent when the transaction is really with a nonresident, and
> it is for the jury to decide, on all the relevant evidence and
> with proper instructions, whether such a charade occurred
> or whether there was a bona fide sale to a resident.[4]

Accord, *United States v Straach*, 987 F2d 232, 239
(CA 5, 1993).

Allowing this case to go to the jury does not
require the adoption of the federally recognized
"straw man doctrine"[5] into Michigan jurisprudence.[6]
To the contrary, allowing the jury to decide whether
the pistol was actually "sold to" Epps would ensure
that the straightforward requirements set forth by the
Legislature are enforced. *People v Morey*, 461 Mich
325, 330; 603 NW2d 250 (1999) (recognizing the prin-
ciple of construction that " '[t]he fair and natural
import of the terms employed, in view of the subject
matter of the law, is what should govern' ") (citation
omitted); *People v Libbett*, 251 Mich App 353, 366; 650

---

[4] The *Brooks* decision was reversed on other grounds in *United States
v Henry*, 749 F2d 203, 206 (CA 5, 1984). See *United States v Straach*, 987
F2d 232, 239 n 9 (CA 5, 1993).

[5] "Straw purchases of firearms occur when an unlawful purchaser . . .
uses a lawful 'straw man' purchaser . . . to obtain a firearm." *United
States v Ortiz*, 318 F3d 1030, 1037 (CA 11, 2003).

[6] See, e.g., *United States v Moore*, 109 F3d 1456, 1460-1461 (CA 9, 1997),
which recognizes the straw man doctrine as "nothing more than a long-
standing construction of the relevant statutes . . . ."

NW2d 407 (2002).[7] In our view, allowing a jury to determine whether defendant actually sold the gun to Little or Epps ensures that the fair and natural import of the "sold to" provision of MCL 28.422(5) is enforced. *Morey, supra*. Moreover, under the dissent's approach, the successful use of a "straw man" would allow ineligible buyers to easily defeat the legislative scheme and purpose of the statute. *United States v Nelson*, 221 F3d 1206, 1209-1210 (CA 11, 2000), citing *United States v Lawrence*, 680 F2d 1126, 1128 (CA 6, 1982). Indeed, to conclude otherwise would defeat the legislative scheme of licensure, sale verification, and retention of records, because the actual purchaser—Little—would never be made known to the authorities because defendant allowed Epps—the "straw man"—to use Little's money to buy the pistol for Little.[8] For these reasons, we reverse the circuit court decision and remand this case to the district court for proceedings consistent with this opinion.

TALBOT, J., concurred.

NEFF, J. (*dissenting*). I respectfully dissent from the majority's decision and its conclusion that the language of the Michigan gun licensing statute, MCL 28.422(5), supports the criminal charge in this case

---

[7] Accordingly, the fact that there are differences between the federal and state firearm laws has no bearing on the proper disposition of this case.

[8] Importantly, this is not our view of what should be punishable. Clearly, the judiciary is neither equipped nor authorized to make policy decisions. *Koontz v Ameritech Services, Inc*, 466 Mich 304, 319; 645 NW2d 34 (2002). Rather, it results from allowing the statutory phrase "sold to" to be applied so that the person defendant actually sold the pistol to is identified.

even without the adoption of the federally recognized "straw person" doctrine. While I agree that the question of guilt in a straw purchase ultimately is one of fact to be decided by a jury, this case presents a preliminary question of law that must be decided before the prosecution can proceed to a jury trial. I would affirm the circuit court decision, because a criminal prosecution cannot be premised on conduct that is not proscribed by a criminal statute.

In reaching its conclusion that the federal straw person doctrine need not be adopted for a jury to find that defendant engaged in criminal conduct, the majority necessarily concluded that the Michigan statutes at issue were unambiguous in proscribing the gun sale in issue. That is, in the majority view, the language of the statutes is clear, therefore no construction by the courts is necessary, and, consequently, the longstanding judicial construction of the federal law applying the straw person doctrine is inapplicable. To the contrary, in comparing the federal and Michigan statutes, I conclude that the Michigan statutes are less clear than their federal counterparts in proscribing the alleged conduct, and do not allow for the application of the straw person doctrine.

Furthermore, under the rules of statutory construction, the rule of lenity must be applied in criminal cases. The statutes at issue must be strictly construed in favor of lenity. Thus, as a matter of law, the charge was properly dismissed and the factual question is not reached.

I. FACTS

Defendant operated a retail firearms business, Laney's Guns and Supplies, in the city of Detroit. On April 6, 1999, Sergeant Walter Epps of the Wayne County Sheriff's Department went to defendant's business, accompanied by Sergeant Roshunda Cummings and eighteen-year-old Antonio Little, who was working with the officers. Epps was outfitted with undercover video surveillance equipment and Cummings wore a hidden audio surveillance device.

As the three approached defendant's store, defendant opened the door and asked what they wanted. Little told defendant that he was interested in purchasing weapons. When defendant inquired whether Little had a permit to purchase[1] a gun, Little responded that he did not. Defendant told Little that he had to be twenty-one to purchase a pistol.[2] However, Epps informed defendant that he had a permit to purchase a gun. Epps, in fact, had a permit, issued and signed by him under an alias, Dino Otis Labose, Epps's assigned undercover name. Defendant then proceeded with the sale.

During the course of the transaction, Epps and Little inquired about different guns, asking prices, and defendant answered questions from Epps about permissible gun sales.[3] Little chose a pistol and, after

---

[1] That is, an application and a license to purchase a pistol, which are issued by local police departments, MCL 28.422(3).

[2] A person must be twenty-one years of age or older to purchase a pistol from a federally licensed gun dealer. MCL 28.422(3)(b).

[3] For example, when Epps asked whether defendant had additional guns in stock, defendant told him that it did not matter because only one pistol could be purchased every five working days even if Epps had more than one permit to purchase.

examining it, attempted to purchase it by handing defendant the money. However, defendant refused to take money from Little, stating that Epps had to give him the money for the purchase. Little gave money to Epps, and Epps gave defendant that money to purchase the gun. Epps and defendant completed the required paperwork for the transaction, with Epps as the purchaser.

### II. LEGAL ISSUE PRESENTED

The question presented by plaintiff for our decision on appeal is:

> A "straw man" transaction occurs when one who is eligible to purchase a pistol does so on behalf of one who is not eligible, and deems the purchase to have been made by the ineligible person. The charge here is that defendant knowingly engaged as seller in a straw-man transaction, and falsely stated on the required form that he had sold to an eligible person. Are these facts, if proven at trial, sufficient for guilt under the relevant statutes?

The majority concludes that the federally recognized straw person doctrine need not be adopted to allow this case to go to the jury. I conclude otherwise. It is undisputed that the gun sale in this case involved an eligible purchaser as well as an ineligible putative purchaser. This factual context presents a classic straw person transaction, as the prosecution recognizes. The prosecutor's theory was that defendant knowingly engaged in a "straw man" transaction whereby a pistol was actually sold to Little, an ineligible buyer, and defendant therefore violated the statutes by indicating on the licensing forms that the pistol was sold to the licensee, Epps.

Defendant is a federally licensed firearms dealer. The federal and state gun laws work in tandem to regulate the sale and licensing of guns. Although the federal gun laws have been used to prosecute straw purchases, as well as sales, defendant was prosecuted under state law. Michigan has not applied the federally adopted straw person doctrine to prosecute state law violations. The issue for decision, then, is whether the federal straw person doctrine may be applied to the analogous Michigan statute.

### III. STANDARD OF REVIEW

A ruling that alleged conduct falls within the scope of a criminal statute is a question of law that is reviewed de novo. *People v Thomas*, 438 Mich 448, 452; 475 NW2d 288 (1991); *People v Premo*, 213 Mich App 406; 540 NW2d 715 (1995). The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *People v Venticinque*, 459 Mich 90, 99; 586 NW2d 732 (1998). If the language of the statute is clear and unambiguous, the Legislature is presumed to have intended the meaning it plainly expressed, and the statute must be enforced as written. *Id.* at 99-100. Courts may not speculate regarding the probable intent of the Legislature beyond the language expressed in the statute. *People v Al-Saiegh*, 244 Mich App 391, 399; 625 NW2d 419 (2001); *Cherry Growers, Inc v Agricultural Marketing & Bargaining Bd*, 240 Mich App 153, 173; 610 NW2d 613 (2000). " '[I]f the plain and ordinary meaning of the language is clear, judicial construction is normally neither necessary nor permitted.' " *People v Philabaun*, 461 Mich 255, 261; 602 NW2d 371 (1999),

quoting *People v Philabaun*, 234 Mich App 471, 486-487; 595 NW2d 502 (1999) (MURPHY, J., dissenting).

### IV. ANALYSIS

Defendant was charged with violating MCL 750.223(1), which provides that "[a] person who knowingly sells a pistol without complying with [MCL 28.422] is guilty of a misdemeanor, punishable by imprisonment for not more than 90 days, or a fine of not more than $100.00 or both." The charge was based on defendant's alleged violation of subsection 5 of MCL 28.422, which provides, in relevant part:

> Upon the sale of the pistol, the seller shall fill out the license forms describing the pistol sold, together with the date of the sale, and sign his or her name in ink indicating that the pistol was sold to the licensee. The licensee shall also sign his or her name in ink indicating the purchase of the pistol from the seller.[4]

Further, MCL 28.422(3)(b) requires that a person be at least twenty-one years of age to purchase a pistol from a federally licensed gun dealer.[5] The prosecution posited that because defendant knew that Little, an underage nonlicensee, was actually purchasing the pistol, and Epps was merely acting as a straw person, defendant violated MCL 28.422(5) when he indicated on the paperwork that the gun was sold to Epps, the licensee.

---

[4] At the relevant time, both MCL 750.222(d) and MCL 28.421(c) provided that, a " '[p]urchaser' means a person who receives a pistol from another person by purchase, gift, or loan." Similarly, MCL 750.222(e) and MCL 28.421(d) previously provided that a " '[s]eller' means a person who sells, furnishes, loans, or gives a pistol to another person."

[5] A seller licensed pursuant to 18 USC 923.

A

On appeal, the prosecution contends that the district court erred in holding that a seller's knowing participation in a straw person purchase of a pistol by an ineligible buyer does not violate MCL 750.223. The prosecution relies solely on the federal, judicially created straw man doctrine, applied in construing the federal Gun Control Act of 1968, 18 USC 921 *et seq.* See *United States v Moore,* 109 F3d 1456, 1461 (CA 9, 1997). The prosecution's argument is, in essence, that the Legislature must have intended that the term "sold" in MCL 28.422(5) be broadly construed to prohibit straw person transactions. The prosecution does not contend that the Michigan statutes plainly proscribe the alleged conduct even without application of the straw person doctrine, as the majority concludes. Comparing the federal and state statutes, I find no basis for the majority's "plain language" conclusion. The term "sold," plainly expressed, does not proscribe the transaction in this case, a sale involving an eligible licensee, Epps. The Michigan statutes are not more explicit than the federal statutes such that reliance on the judicially created straw person doctrine may be ignored in prosecuting this case.

B

My review of the legal underpinnings of the federal judiciary's use of the straw person doctrine convinces me that the Michigan statutes, as written, do not warrant application of the doctrine. In general, federal firearms law is much broader than the Michigan law. Under the federal firearms statutes, 18 USC 922, 924,

several provisions are used to prosecute licensed dealers who participate in straw purchases:

> Section (b)(3) prohibits licensed dealers from selling to anyone who does not reside in-state, and section (b)(5) requires licensed dealers to record certain information such as name, age and place of residence of the purchaser of a firearm. 18 USC § 922(b)(3), (5).

> Section 922(m) of Title 18 has similarly been utilized in prosecuting a licensed dealer for his involvement in a straw purchase. *E.g., United States v Cha*, 837 F2d 392, 393 (9th Cir 1988). Almost redundant with the provisions of § 922(b), § 922(m) states that "[i]t shall be unlawful for any licensed . . . dealer . . . knowingly to make any false entry in, to fail to make an appropriate entry in, or fail to properly maintain, any record which he is required to keep pursuant to section 923 of this chapter or regulations promulgated thereunder." 18 USC § 922(m).

*　*　*

> [Subsection 924(a)(3)[6] is also applied to dealers who make a misrepresentation regarding the intended transferee of a gun]:

> (3) Any licensed dealer, licensed importer, licensed manufacturer, or licensed collector who knowingly—

> (A) makes any false statement or representation with respect to the information required by the provisions of this chapter to be kept in the records of a person licensed under this chapter, or

> (B) violates subsection (m) of section 922, shall be fined under this title, imprisoned not more than one year, or both. 18 USC § 924(a)(3).

---

[6] Because most provisions in § 922 do not contain a penalty provision, courts must look to § 924, the penalty provision of the federal firearms statutes, to determine the appropriate punishment. However, § 924 also contains substantive criminal provisions, which have independently been used to prosecute straw transactions. *People v Wegg*, 919 F Supp 898, 902 (ED Va, 1996).

This section was added as part of the Firearm Owners' Protection Act of 1986, Pub L No 99-308, 100 Stat 449 (1986). This provision similarly criminalizes a licensed dealer's knowing acceptance of the BATF[7] form completed by the straw purchaser (and signature on the BATF form itself) as a record-keeping violation, but provides only for a misdemeanor penalty. Through § 924(a)(3)(B), a licensed-dealer's involvement in a straw purchase prosecuted under § 922(m) similarly results in a misdemeanor penalty. [*People v Wegg*, 919 F Supp 898, 902-903 (ED Va, 1996).]

The federal statute is clearly more comprehensive in proscribing dealer conduct than is MCL 28.422(5), and therefore the broad federal proscriptions can reasonably be interpreted as prohibiting a straw sale.

Notwithstanding, subsection 922(b)(5), which has been used to prosecute a straw sale,[8] is similar to the Michigan law. It states:

> (b) It shall be unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector to sell or deliver–
>
> * * *
>
> (5) any firearm or armor-piercing ammunition to any person unless the licensee notes in his records, required to be kept pursuant to section 923[9] of this chapter, the name, age, and place of residence of such person if the person is an individual, or the identity and principal and local places of business of such person if the person is a corporation or other business entity.

---

[7] The federal Bureau of Alcohol, Tobacco and Firearms.

[8] *United States v Rietzke*, 279 F3d 541 (CA 7, 2002); *United States v Percival*, 727 F Supp 1015 (ED Va, 1990).

[9] 18 USC 923(g)(1)(A) states, in pertinent part: "Each licensed importer, licensed manufacturer, and licensed dealer shall maintain such records of importation, production, shipment, receipt, sale, or other disposition of firearms at his place of business for such period, and in such form, as the Attorney General may by regulations prescribe."

In comparison, defendant in this case was prosecuted under MCL 750.223(1) and MCL 28.422(5). MCL 750.223(1) states:

> A person who knowingly sells a pistol without complying with [MCL 28.422] is guilty of a misdemeanor, punishable by imprisonment for not more than 90 days, or a fine of not more than $100.00, or both.

MCL 28.422(5) states:

> Upon the sale of the pistol, the seller shall fill out the license forms describing the pistol sold, together with the date of sale, and sign his or her name in ink indicating that the pistol was sold to the licensee. The licensee shall also sign his or her name in ink indicating the purchase of the pistol from the seller. The seller may retain a copy of the license as a record of the sale of the pistol. The licensee shall return 2 copies of the license to the licensing authority within 10 days following the purchase of the pistol.

The federal statute is broader in scope, encompassing and proscribing conduct well beyond that in the Michigan statute. Although the federal statute uses the language "sell or deliver," arguably these statutory provisions, subsection 922(b)(5) and MCL 750.223(1), 28.422(5), are sufficiently similar to justify application of the federal straw person doctrine under the Michigan law. However, such a conclusion disregards the fact that the Michigan statute is not as explicit with regard to the conduct proscribed, nor are the statutes, as a whole, similar.

The federal statute explicitly states that engaging in the stated conduct is "unlawful." However, the Michigan statute is ambiguous with regard to the specific conduct intended to be proscribed. Given its sentence construction, the Michigan statute could be read to

ensure only that the dealer completes and signs the required record—"the seller shall fill out the license forms . . . and sign his or her name"—particularly since MCL 28.422 is a *licensing* statute. The language at issue in MCL 28.422(5) is vague and merely *modifies* the explicit requirement that the seller sign the form—"sign his or her name in ink, *indicating that the pistol was sold to the licensee.*" (Emphasis added.)

A comparison of other provisions of the Michigan statute supports a conclusion that the language at issue was not intended to specifically proscribe sales to straw persons. Other provisions of MCL 750.223 contain explicit language prohibiting a seller from engaging in certain sales, as opposed to failing to comply with the licensing provisions of MCL 28.422:

> (2) A person who knowingly sells a firearm more than 30 inches in length to a person under 18 years of age is guilty of a misdemeanor, punishable by imprisonment for not more than 90 days, or a fine of not more than $500.00, or both. A second or subsequent violation of this subsection is a felony punishable by imprisonment for not more than 4 years, or a fine of not more than $2,000.00, or both. It is an affirmative defense to a prosecution under this subsection that the person who sold the firearm asked to see and was shown a driver's license or identification card issued by a state that identified the purchaser as being 18 years of age or older.

> (3) A seller shall not sell a firearm or ammunition to a person if the seller knows that either of the following circumstances exists:

> (a) The person is under indictment for a felony. As used in this subdivision, "felony" means a violation of a law of this state, or of another state, or of the United States that is punishable by imprisonment for 4 years or more.

(b) The person is prohibited under section 224f [10] from possessing, using, transporting, selling, purchasing, carrying, shipping, receiving, or distributing a firearm.

(4) A person who violates subsection (3) is guilty of a felony, punishable by imprisonment for not more than 10 years, or by a fine of not more than $5,000.00, or both. [MCL 750.223.]

Applying the straw person doctrine under the Michigan statute requires that the ambiguity in the Michigan statute be ignored. On the other hand, if the ambiguity is acknowledged, then the rule of lenity is properly applied. Criminal statutes are to be strictly construed in favor of lenity. *People v Gilbert*, 414 Mich 191, 211; 324 NW2d 834 (1982); *People v Rutledge*, 250 Mich App 1, 5; 645 NW2d 333 (2002).

The application of the straw person doctrine is based on a "long-standing construction" of the federal statutes. *Moore, supra* at 1460. In *Moore*, the federal court observed that "it is a construction of the statute that directly serves the primary purpose of the Gun Control Act, which is ' "to make it possible to keep firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency." ' " *Id.* at 1461 (citations omitted). Subsections 922(b)(1)-(3) make it unlawful for licensed dealers to sell firearms to individuals who are ineligible to purchase them as a result of restrictions imposed under state law, or because of the individual's age or out-of-state residence. *United States v Nelson*, 221 F3d 1206, 1209 (CA 11, 2000). Michigan's statute contains no comparable provision expressly

---

[10] This section pertains to possession of a firearm by a person convicted of a felony. MCL 750.224f.

making it unlawful for a dealer to sell to an underage buyer.

Moreover, the language of the Michigan statute is not so explicit that concerns regarding notice may be disregarded. Under the federal law, it is clear that straw person sales are illegal. A 1993 case indicates that the Bureau of Alcohol, Tobacco and Firearms (BATF) has a circular that defines the term "strawman transaction" and states that such transactions are illegal. *United States v Straach*, 987 F2d 232, 234 (CA 5, 1993). In *Straach*, law enforcement officers claimed that they gave the circular to the dealer. *Id*. Further, the BATF form required for firearms transactions, filed by dealers, contains a warning:

> WARNING—The sale or delivery of a firearm by a licensee to an eligible purchaser who is acting as an agent, intermediary or "straw purchaser" for someone whom the licensee knows or has reasonable cause to believe is ineligible to purchase a firearm directly, may result in a violation of the Federal firearm laws. [*Id*. at 235.[11]]

---

[11] More recently, in *Nelson, supra* at 1208 n 1, the court referred to the federal BATF warning:

Question 8(a) on Form 4473 requires an individual to certify that he is the "actual buyer" of the firearm or firearms listed on the form, as follows:

Are you the actual buyer of the firearm indicated below? If you answer no to this question the dealer cannot transfer the firearm to you. *(See Important Notice 1.)*.

Important Notice 1 is on the second page of the form and provides:

WARNING—The Federal firearms laws require that the individual filling out this form must be buying the firearm for himself or herself or as a gift. Any individual who is not buying the firearm for himself or herself or as a gift, but who completes this form, violates the law. Example: Mr. Smith asks Mr. Jones to purchase a firearm for Mr. Smith. Mr. Smith gives Mr. Jones the money for the firearm. If Mr. Jones fills out the form, he will violate the law. However, if Mr. Jones buys a firearm with his own money to give to Mr.

C

The Michigan statutes do not support application of
the straw person doctrine under the circumstances of
this case. Construing MCL 750.223(1) to encompass
the straw person doctrine as the basis of the alleged
criminal conduct is inconsistent with our rules of
statutory interpretation. Courts may not speculate
regarding the probable intent of the Legislature
beyond the language expressed in the statute. *Al-
Saiegh, supra* at 399; *Cherry Growers, Inc, supra* at
173.

To impose liability under a straw person theory in
this case would expand the Legislature's definition of
the criminal offense under MCL 750.223(1). Criminal
statutes are to be strictly construed in favor of lenity.
*Gilbert, supra,* at 211; *Rutledge, supra* at 5. It is the
Legislature's responsibility to define criminal offenses
and thereby determine what conduct is within the
scope of a statutory prohibition. *People v Crousore,*
159 Mich App 304, 310; 406 NW2d 280 (1987). The
Legislature included no provision to address straw
person transactions under MCL 750.223(1) or MCL
28.422(5).

Importantly, what is clear from the surveillance
tape is that defendant was fully aware of the legal
requirements, state and federal, he had to meet to sell
a firearm and that he was insistent on following the
letter of the law in each regard. Defendant was well
versed in the applicable law, explaining its nuances to

---

Smith as a birthday present, Mr. Jones may lawfully complete this
form. A licensee who knowingly delivers a firearm to an individual
who is not buying the firearm for himself or herself or as a gift vio-
lates the law by maintaining a false ATF F[orm] 4473.

the officers throughout the transaction and, by all indications, he had no intent to engage in any illegal conduct. In short, he believed that he was complying with the letter, if not the spirit, of the law. These facts bolster the conclusion that the statute is not clear and unambiguous in proscribing the alleged conduct.

MCL 28.422(5) requires a seller to "fill out the license forms describing the pistol sold, together with the date of the sale, and sign his or her name in ink indicating that the pistol was sold to the licensee . . . ." It is undisputed that defendant completed the licensing forms indicating that he sold the gun to the licensee, Epps. In so doing, defendant complied with the statute. Defendant's conduct was therefore not contrary to MCL 750.223(1).

### V. SUMMARY

As acknowledged by the prosecution, this case cannot be prosecuted under Michigan law without adopting and applying the straw person doctrine developed by the federal judiciary under federal gun laws. A close analysis of federal and Michigan law convinces me that the straw person doctrine cannot be applied to the Michigan statute to sustain the prosecution of defendant under Michigan law. I would affirm.